688 So.2d 570 (1996)
Cabell Ward BANNERMAN, individually and as Executor of the Estate of Elizabeth A. Bannerman, Deceased, Dempsey E. Bannerman, and Paul L. Storey, Plaintiff-Appellants,
v.
Thomas W. BISHOP, Thomas Kyle Godfrey, a Minor, Bonnie K. Bishop, a Minor, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, Defendants-Appellees.
No. 28382-CA.
Court of Appeal of Louisiana, Second Circuit.
July 2, 1996.
Opinion Reversing on Rehearing, October 16, 1996.
Writ Denied January 10, 1997.
*571 Sam N. Gregorio, Shreveport, for Plaintiffs-Appellants.
Hayes, Harkey, Smith & Cascio By Charles S. Smith, Monroe, for Defendants-Appellees.
Before SEXTON, HIGHTOWER and BROWN, JJ.
SEXTON, Judge.[*]
After finding that the defendant, Thomas Kyle Godfrey, and the deceased, Mrs. Elizabeth Bannerman, were both negligent, a jury found that the negligence or fault of Thomas Kyle Godfrey was not a proximate cause of the injuries which resulted in the death of Mrs. Bannerman. From a judgment dismissing their claim for damages, the plaintiffs appeal alleging error in the jury verdict and error by the trial court in denying a challenge for cause against a prospective juror. We affirm.
*572 On December 26, 1991, 81-year-old Elizabeth Bannerman was severely injured when her 1987 Oldsmobile collided with a Magnolia tree in the front yard of a residence approximately 180 feet south of the intersection of LaSalle Street and Tampa Street in Tallulah, Louisiana. The collision with the Magnolia tree followed a minor collision at the intersection proper with a 1984 Nissan driven by 14-year-old Thomas Kyle Godfrey. Mrs. Bannerman subsequently died from her injuries on March 7, 1992. Bonnie Bishop, age 15, was a passenger in the Nissan owned by her father, Thomas Bishop, and it was she who gave Kyle Godfrey permission to drive the vehicle.
A petition for damages and wrongful death was filed by the plaintiffs. Following trial, the jury returned a special verdict resulting in the dismissal of plaintiff's claim by responding to jury interrogatories as follows:
(1) Do you find by a preponderance of the evidence that Thomas Kyle Godfrey was guilty of any fault or negligence?
 Yes: 10
 No: 2
. . . .
(2) Do you find by a preponderance of the evidence that the plaintiffs' decedent, Elizabeth Bannerman, was guilty of any fault or negligence?
 Yes: 12
 No: 0
. . . .
(3) Was the negligence or fault of Thomas Kyle Godfrey a proximate cause of the injuries and resulting death of Elizabeth Bannerman in the accident of December 26, 1991?
 Yes: 2
 No: 10
A judgment dismissing the defendants was signed on May 5, 1994, in accordance with the jury's findings. Plaintiffs filed a motion for J.N.O.V. and alternatively, a motion for a new trial, the latter based on prejudice to the plaintiffs' case by alleged improper conduct of a juror, Barbara Busby, whom plaintiffs had unsuccessfully challenged for cause on voir dire. The plaintiffs presented affidavits obtained from five jurors after trial regarding the alleged misconduct, which the trial court, pursuant to Louisiana Code of Evidence Article 606(B), refused to consider. Both motions were denied. Plaintiffs appeal alleging the following assignments of error:
(1) The verdict and judgment are contrary to the law and facts of (a) causation and (b) comparative negligence.
(2) The trial court erred in denying plaintiffs' challenge for cause of prospective juror, Barbara Busby.
Initially, we consider plaintiffs' contention that the trial court erred in denying its challenge for cause of prospective juror, Ms. Barbara Busby.
When a juror has formed an opinion in the case or is not otherwise impartial, he or she may be challenged for cause. LSA-C.C.P. Art. 1765(2). A trial court is vested with great discretion in ruling on such a challenge, and its ruling will not be disturbed on appeal unless a review of voir dire as a whole indicates an abuse of discretion. Stapleton v. Great Lakes Chemical Corp., 616 So.2d 1311 (La.App.2d Cir.1993), writ granted, 620 So.2d 856, affirmed in part, vacated in part, 627 So.2d 1358, rehearing denied, on remand, 24,386 (La.App.2d Cir. 5/4/94), 639 So.2d 300, on rehearing in part, writ denied, 94-2220 (La. 11/18/94), 646 So. 380. The court's ruling will be reversed only if it is shown that the exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to a party. State v. Widenhouse, 582 So.2d 1374 (La.App.2d Cir.1991), writ denied, 586 So.2d 567, U.S. cert. denied, 503 U.S. 910, 112 S.Ct. 1274, 117 L.Ed.2d 500 (1991). See also, Stapleton v. Great Lakes Chemical Corp., supra, concluding that criminal jurisprudence on challenges for cause may properly be considered in civil cases.
Originally on voir dire, Ms. Busby admitted to having friendships with some of the defendants and a defense witness. Ms. Busby, however, assured the court and counsel that none of this would affect her ability to serve fairly in the case. She claimed no prefixed opinion or prejudice against one side or the other.
*573 At that time, neither counsel challenged Ms. Busby for cause or exercised a peremptory challenge.
Thereafter, plaintiffs' counsel learned that a potential juror, Ms. Busby, had made a remark in back of the courtroom to several women to the effect that "the old lady was too old to be driving an automobile." However, upon suggestion of the court, the parties continued with jury selection.
Only after plaintiffs exhausted their remaining peremptory challenges was Ms. Busby questioned whether she knew the age of Mrs. Bannerman or had a conversation about Mrs. Bannerman's age with another prospective juror. The juror denied these allegations but noted that two other jurors had made such a remark earlier.[1] Plaintiffs then unsuccessfully challenged Ms. Busby for cause. Mr. David Brewer, the prospective juror who had reported Ms. Busby's remark, was then brought in to be questioned on the matter.
Mr. Brewer repeated his allegations concerning Ms. Busby's comment. However, he could not say whether the other women were prospective jurors; nor could he be sure Ms. Busby had been speaking about Mrs. Bannerman when she made the statement. The court then refused to excuse Ms. Busby for cause.
On appeal, the plaintiffs contend that the voir dire examination of Ms. Busby shows that she was not an impartial juror and the challenge for cause should have been upheld. LSA-C.C.P. Art. 1765(2). Based upon our review of the entire voir dire record, we conclude that the trial judge was not arbitrary or unreasonable in concluding that her responses to the voir dire examination were sincere and not evasive. The voir dire responses simply do not show prejudice on the part of Ms. Busby. Therefore, there was no abuse of discretion that would warrant reversal.
Additionally, in support of a motion for new trial, plaintiffs submitted five affidavits obtained from jurors after trial in the case in an effort to show that Ms. Busby did not answer truthfully on voir dire and that she made opinionated comments during deliberations with the intent of influencing the other jurors. Not only are such documents inadmissible, but we also find no merit in this contention.
Louisiana Code of Evidence Article 606(B) provides:
B. Inquiry into validity of verdict or indictment.
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. [Emphasis supplied.]
Although plaintiffs contend that these affidavits reveal that Ms. Busby did not respond truthfully on voir dire, the affidavits do not contradict any specific statements made by Ms. Busby on voir dire. We must infer then that plaintiffs contend that Ms. Busby was untruthful when she stated she could render a fair and impartial verdict despite the fact that she knew some of the defendants.
However, the use of affidavits to show as untruthful a juror's general statement, that he could render an impartial verdict, does not fall within the exception to LSA-C.E. 606(B). Young v. Armadores De Cabotaje, S.A., 617 So.2d 517, 534 (La.App. 4th Cir. 1993), writs denied 625 So.2d 170 (La.1993); Ryals v. Home Ins. Co., 410 So.2d 827 (La. App. 3d Cir.1982), writs denied, 414 So.2d 375, 376 (La.1982). Furthermore, although the reports of Ms. Busby's behavior during *574 deliberations do confirm her to be opinionated, there is no evidence of misconduct or undue influence. The presence on a jury of a highly opinionated person does not constitute improper behavior so as to preclude achievement of impartial justice within the meaning of LSA-C.C.P. Art. 1972(3). Blandino v. Brown Erection Company, Inc., 341 So.2d 577 (La.App.2d Cir.1977).
We are not convinced that the remarks Ms. Busby reportedly made precluded the plaintiffs from receiving a fair trial, nor do they indicate that Ms. Busby was untruthful on voir dire. Further, as stated, we find no abuse of discretion by the trial court in denying plaintiff's challenge for cause of Ms. Busby.
Turning now to plaintiffs' first assignment of error, we begin by noting the well-established standard of review utilized by appellate courts in reviewing jury or trial court factual findings, per Rosell v. ESCO, 549 So.2d 840 (La.1989):
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. (Citations omitted.)
. . . .
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. (Citations omitted.) Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. (Citations omitted.) But where such factors are not present, and a factfinder's finding is based upon its decisions to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (Citations omitted.)
Plaintiffs contend that the verdict and judgment are contrary to the law and facts of (1) causation and (2) comparative negligence. Relying on Weaver v. Valley Electric Membership Corporation, 615 So.2d 1375 (La. App.2d Cir.1993), plaintiffs argue that, as a matter of law, the jury could not find that Kyle Godfrey was negligent, and then conclude that his negligence was not the proximate cause of the injuries resulting from the collision with the Magnolia tree.
In Weaver, a farm laborer was injured by electrical shock while he was attempting to release a neutral wire that had snagged on a cotton picker. The wire hung lower than the minimum height suggested by industry safety standards. Weaver was injured when he somehow contacted or grasped an upper energized wire after climbing atop the picker while attempting to release the lower "neutral" conductor wire that had snagged the picker. The jury concluded that the defendant electric company, VEMCO, was negligent in that its failure to maintain its lines at a reasonably safe height breached a legal duty owed to Weaver and caused his injuries. The jury then concluded "that VEMCO's negligence was not the legal `cause' of the accident." Weaver, supra at 1379. This court reversed, stating that the jury's second conclusion was erroneous and directly contrary to its first conclusion because the second conclusion "implied that either VEMCO did not breach a legal duty it owed to Weaver that caused him injury or that VEMCO's negligence was somehow `excused,' perhaps by Weaver's `concurrent' or `later' negligence." Weaver, supra at 1379. After a lengthy discussion of the jurisprudence that separates the factual question of cause in fact from the legal question of legal cause, we found that the record did not support the latter and held that "[t]he jury's verdict and the trial court's ruling on the legal `cause' issue were wrong either in the implied conclusion *575 that VEMCO's duty did not extend to protect Weaver from the injuries he sustained under the particular circumstances or in the implied conclusion that VEMCO's duty was somehow excused or subsumed by Weaver's negligence." Weaver, supra, at 1386.
Plaintiffs correctly read Weaver (citing F. Stone, 12 Louisiana Civil Law Treatise Tort Doctrine (1977)) to state that "[n]egligence, by definition, is conduct which breaches a legal duty owed by a defendant to a plaintiff and causes in fact injury to plaintiff." Plaintiffs argue on appeal that the apparent inconsistency in this case of the jury finding Kyle Godfrey negligent in the first jury interrogatory, but later finding that his negligence was not a proximate cause (a term often substituted for legal cause) of the injuries to Mrs. Bannerman, cannot, as a matter of law, stand. We find that this argument strains a fair interpretation of Weaver when read in its entirety.
We note that Professor Robertson, in his Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. (1973), once posed the following hypothetical: "If I hand an eight-year old child a loaded shotgun; if he takes it home and gives it to his father; if that night his father gets drunk and kills your prize heifer, ... [the odds are] nine to one that I escape liability to you, even though: (1) I was negligent ... [and] (2) [m]y conduct was a cause of your loss." Robertson went on to conclude that the initial giver's negligence was not a proximate cause of the loss, that "too much else has intervenedtime, space, people, and bizarreness." See also, Roberts v. Benoit, 605 So.2d 1032 (La.1991). Thus, negligent conduct is not always the legal or proximate cause of the damage.
The special verdict jury interrogatory in this case did not incorrectly frame the question of negligence or fault of the defendant and plaintiff and then ask whether the negligence or fault of the defendant was a proximate cause of the injuries to the plaintiff. The instant interrogatories parallel the substance of the suggested special jury interrogatories in LSA-C.C.P. Art. 2812C, which suggest that the interrogatories inquire into:
(1) whether the defendant was at fault, and, if so, (a) whether such fault was a legal cause of the damages, and, if so, (b) the percentage of such fault;
(2) whether another party or non-party was at fault, and, if so (a) whether such fault was a legal cause of the damages, and, if so, (b) the percentage of such fault;
(3) whether the plaintiff was at fault, and, if so, (a) whether such fault was a legal cause of the damages, and, if so, (b) the percentage of such fault; and
(4) the total amount of damages.
The questions in the jury verdict in the instant case do not ask the jury to differentiate between cause in fact and proximate or legal cause. Rather, they ask for a factual finding of whether there was negligence on the part of the defendant, Kyle Godfrey, to which the jury responded "yes," and a factual finding of whether there was negligence of the part of Mrs. Bannerman, to which the jury responded "yes." Then they ask the factual question of whether the negligence of Kyle Godfrey was a proximate cause of the injuries and resulting death of Mrs. Bannerman, to which the jury responded "no." Cf. Chambers v. Graybiel, 25,840 (La.App.2d Cir. 6/22/94), 639 So.2d 361, writs denied, 94C1948 (La. 10/28/94), 644 So.2d 377. Taken as a whole, the verdict form thus indicates that in order to find liability on the part of the defendants, the jury must first find that Kyle Godfrey was negligent and that his negligence caused the plaintiff's damages. Chambers, supra.
Thus, the instant jury verdict does not inherently conclude that the negligence of Kyle Godfrey was a cause in fact of Mrs. Bannerman's injuries, but merely that Kyle Godfrey was negligent. It further concludes that this negligence was not a proximate cause of Mrs. Bannerman's injuries and subsequent death.
We see no error as a matter of law in a jury verdict that finds negligence or fault on the part of a defendant, but further finds that the negligence of the defendant was not a proximate cause of the damages giving rise to the claim. Chambers v. Graybiel, supra. There must exist, however, a reasonable factual *576 basis in such record to support the jury's factual findings.
The key question, then, is where the collision occurred. Plaintiffs' expert, Mr. Ray Herd, testified that the collision occurred in the center of the intersection. The collision was very slight, knocking Mrs. Bannerman off course about five degrees. Mr. Herd testified that the collision could not have occurred at the point in the intersection described by Kyle. He stated that if Mrs. Bannerman was indeed angling over and headed off the road, the front, and not the rear, of her vehicle would have struck Kyle's vehicle.
It is on this last key point that the jury obviously found in favor of defendants. Mr. Herd admitted that he did not measure the angle at which Tampa Street intersected LaSalle, and he presumed it was roughly 90 degrees. On the other hand, Mr. Fay, defendants' expert, did measure the angle at which Tampa Street intersects LaSalle and found it to be 80 degrees. The aerial photograph of the intersection exhibited by the defendants graphically demonstrates why the rear, and not the front of Mrs. Bannerman's vehicle would have struck Kyle Godfrey's vehicle while he was stopped at the intersection as she angled off LaSalle Street.
Moreover, the medical records in evidence indicate that Mrs. Bannerman suffered from stomach ulcers. These records reveal that Mrs. Bannerman was having stomach problems before the accident. There was considerable old and fresh blood found in Mrs. Bannerman's stomach after the accident and there was blood in her stool. It is apparent, as the record indicates, that she may have passed out from loss of blood just prior to the accident.
Based upon our review of the record, we conclude that the jury did not manifestly err in concluding that the negligence of Kyle Godfrey was not a proximate cause of the injuries sustained by Mrs. Bannerman.
For these reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissenting.
Professor Robertson, in the article cited by the majority, Dialogues on Hill v. Lundin & Associates, Inc., supra, states that intermediate courts "continue to employ causation language to refer to issues other than cause-in-fact, occasionally to the complete detriment of clarity of analysis and correctness of outcome." In Boyer v. Johnson, 360 So.2d 1164 (La.1978), Justice Tate stated that excursions into other issues may divert the appellate court from the fundamental cause-in-fact inquiry and that "[T]hese observations (that the minor had a driver's license and was himself negligent in this one vehicle accident) cannot erase the fact that defendant's substandard conduct (hiring a minor to drive a delivery truck in violation of statute) was a cause-in-fact of the accident. They do, however, have their place in the analysis of whether the risk was within the ambit of defendant's duty (legal cause)." Boyer, 360 So.2d at 1167.
After finding that both Kyle Godfrey, the 14-year-old driver, and the 81-year-old Mrs. Bannerman were negligent, the jury concluded that Mrs. Bannerman's injuries were not "proximately" caused by Godfrey's wrongful conduct. Although speaking in terms of "proximate" or "legal" cause, the majority opinion appears to state that Godfrey's negligence was not a cause-in-fact of Mrs. Bannerman's injuries. That is, that Mrs. Bannerman would have hit the tree regardless of Godfrey's negligent behavior, as opposed to, whether as a matter of public policy the particular injury can be associated with the array of foreseeable risks the threat of which made Godfrey's conduct negligent.
Proper framing of the question is paramount. The injuries sought to be redressed in this case are clear. Following her collision with Godfrey, Mrs. Bannerman ran into a tree, suffered injuries and died. It was a violation of law for the 14-year old Godfrey, who was ineligible for a license, to be driving. Further, Godfrey's particular wrongful conduct was in entering a favored intersection without first insuring that his way was safe. Godfrey's poor judgment resulted in his collision with Mrs. Bannerman's vehicle, which *577 then careened off the road and struck a tree. The next appropriate step in the analysis is to alter Godfrey's behavior by hypostatising that he did stop at the stop sign and that he was a legally licensed driver. With these changes, we have to now ask whether the accident and these injuries would still have occurred. The majority opinion seems to say that Mrs. Bannerman fainted and ran off the street; thus, her accident and injuries would have occurred regardless of Kyle Godfrey's negligence. Actually, the majority opinion, in adopting the opinion of defendant's expert, appears to hold that Godfrey was not negligent. I disagree.
It is well-settled that doubts concerning what would have happened without defendant's negligence should be resolved in plaintiff's favor when plaintiff's injuries are clearly a foreseeable consequence of defendant's wrongful act. Smith v. State of Louisiana, Department Of Health And Hospitals, No. 95-0038, (La. 06/25/96), 676 So.2d 543; Roberts v. Benoit, 605 So.2d 1032 (La.1992); LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978); Boyer v. Johnson, supra; Reynolds v. Texas & Pacific Railway Co., 37 La.Ann. 694 (La.1885).
The policy articulated by the Louisiana Supreme Court in 1885 is still wise and applicable to this case. The court found that the light in a stairway was insufficient at night and rendered the way insecure and that plaintiff, a corpulent woman, might well have made the misstep and fallen even had it been broad daylight. The court then stated:
[W]here the negligence of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury. Courts, in such matters, consider the natural and ordinary course of events, and do not indulge in fanciful suppositions. The whole tendency of the evidence connects the accident with the negligence. (Emphasis added).
Reynolds, 37 La.Ann. at 698.
Professor Wex Malone phrased the same policy as follows:
Whenever it can be said with fair certainty that the rule of conduct relied upon by the plaintiff was designed to protect against the very type of risk to which the plaintiff was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of the proof on cause. Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956).
In Roberts v. Benoit, supra, the Louisiana Supreme Court stated:
... to the extent the defendant's actions had something to do with the injury the plaintiff sustained, the test of a causal relationship is met ... more probably than not, this accident would not have happened if Benoit had possessed the basic qualifications... and if he had been adequately trained....
Roberts, 605 So.2d at 1042.
Cause-in-fact is a factual inquiry and is clearly separate from the question of law concerning the scope of duty. The jury found Godfrey negligent, that is, that he failed to yield and entered the intersection. Defendant's expert differed from the jury and surmised that Godfrey did not enter the intersection. The supposition of the majority that Mrs. Bannerman may have passed out from loss of blood (due to a stomach ulcer) just prior to the accident is just speculation. Neither the jury nor this court can avoid cause-in-fact by fanciful conclusions that because of her advanced age, Mrs. Bannerman reacted poorly, thus, increasing her potential for serious injury in a minor incident.
Mrs. Bannerman's vehicle was struck on the rear driver's side. Mrs. Bannerman's vehicle scraped a utility pole and hit a magnolia tree. Her car left the street 60-66 feet south of the intersection. Ray Herd, plaintiff's expert, stated that a reconstruction from these known points placed Mrs. Bannerman's vehicle in her southbound lane at the time of the collision. Captain Wilmore, who investigated the accident for the city police, examined the debris and skid marks and concluded that the impact was in Mrs. Bannerman's lane of travel. Arthur and *578 Dorothy Bray, who resided near this intersection, heard the collision and saw Godfrey's car stopped in the middle of the intersection. Arthur Bray saw Godfrey standing beside his car and heard him state, "I just barely hit her." Dorothy Bray heard Godfrey say, "I slowed down. I didn't stop.... I'm in big trouble." The windshield of Mrs. Bannerman's car was struck by her head resulting in a spider web pattern. Obviously, she was upright and had not fainted. Thus, the jury correctly found Godfrey negligent and such negligence was a cause-in-fact of Mrs. Bannerman's injuries.
As in Weaver v. Valley Electric Membership Corp., supra, the fact that Mrs. Bannerman was 81 years old and reacted poorly when struck by Godfrey is not so far removed or bizarre as to invoke policy reasons to find that Godfrey's wrongful conduct was not a "legal" or "proximate" cause of her injuries.
In Roberts v. Benoit, 605 So.2d at 1044, the Louisiana Supreme Court quoted with approval Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956):
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.
Clearly, the scope of protection against a motorist running a stop sign protects this driver from this type of harm arising in this manner. This determination concerns policy and was for the trial court. Certainly, the majority cannot be saying, as did the juror Barbara Busby, that a duly licensed 81-year-old should not have been driving.
After such an analysis, it becomes clear that the juror, Barbara Busby, harbored such prejudice against plaintiffs in this case that a fair trial was precluded. At the time Ms. Busby was questioned, the trial court's conclusion to deny the for cause challenge was proper; however, under the circumstances, additional challenges should have been given to each side. Thereafter, the affidavits clearly demonstrated prejudice.
Before MARVIN, C.J., and SEXTON, HIGHTOWER, BROWN and STEWART, JJ.

ON REHEARING
BROWN, Judge, On Rehearing.
Adopting the analysis of the original dissent, we reverse and render judgment in favor of plaintiffs.
A proper framing of the question is paramount. Cause-in-fact is a factual inquiry and is clearly separate from the question of law concerning the scope of duty. In Boyer v. Johnson, 360 So.2d 1164 (La.1978), Justice Tate stated that excursions into other issues may divert the appellate court from the fundamental cause-in-fact inquiry and that:
"[T]hese observations (that the minor had a driver's license and was himself negligent in this one vehicle accident) cannot erase the fact that defendant's substandard conduct (hiring a minor to drive a delivery truck in violation of statute) was a cause-in-fact of the accident. They do, however, have their place in the analysis of whether the risk was within the ambit of defendant's duty (legal cause)."
Boyer, 360 So.2d at 1167.
Although finding Kyle Godfrey, the 14-year-old driver, negligent, the jury concluded that Mrs. Bannerman's injuries were not "proximately" caused by Godfrey's wrongful conduct. The jury confused causation with other issues to the detriment of clarity of analysis and a correct outcome. *579 Although speaking in terms of "proximate" or "legal" cause, the jury appears to state that Godfrey's negligence was not a cause-in-fact of Mrs. Bannerman's injuries. That is, that Mrs. Bannerman would have hit the tree regardless of Godfrey's negligent behavior, as opposed to whether as a matter of public policy the particular breach of conduct can be associated with the risk of Mrs. Bannerman striking the tree.
Mrs. Bannerman's vehicle was struck by Godfrey's car on the rear driver's side. Mrs. Bannerman's vehicle left the street 60-66 feet south of the intersection, scraped a utility pole and hit a magnolia tree. Ray Herd, plaintiff's expert, reconstructed the accident from known points and concluded that Mrs. Bannerman's vehicle was in her southbound lane at the time of the collision. Captain Wilmore, who investigated the accident for the city police, examined the debris and skid marks and concluded that the impact was in Mrs. Bannerman's lane of travel. Arthur and Dorothy Bray, who resided near this intersection, heard the collision and saw Godfrey's car stopped in the middle of the intersection. Arthur Bray saw Godfrey standing beside his car and heard him state, "I just barely hit her." Dorothy Bray heard Godfrey say, "I slowed down. I didn't stop.... I'm in big trouble."
Godfrey's particular wrongful conduct was in entering a favored intersection without first insuring that his way was safe. Godfrey's poor judgment resulted in his collision with Mrs. Bannerman's vehicle, which then careened off the road and struck a tree. We have to now ask whether the accident and these injuries would have occurred even without Godfrey's misconduct.
It is well-settled that doubts concerning what would have happened without defendant's negligence should be resolved in plaintiff's favor when plaintiff's injuries are clearly a foreseeable consequence of defendant's wrongful act. Smith v. State of Louisiana, Department Of Health And Hospitals, No. 95-0038, (La. 06/25/96), 676 So.2d 543; Roberts v. Benoit, 605 So.2d 1032 (La.1991); LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978); Boyer v. Johnson, supra; Reynolds v. Texas & Pacific Railway Co., 37 La.Ann. 694 (La.1885).
Professor Wex Malone phrased the same policy as follows:
Whenever it can be said with fair certainty that the rule of conduct relied upon by the plaintiff was designed to protect against the very type of risk to which the plaintiff was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of the proof on cause.
Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956).
In Roberts v. Benoit, supra, the Louisiana Supreme Court stated:
... to the extent the defendant's actions had something to do with the injury the plaintiff sustained, the test of a causal relationship is met ... more probably than not, this accident would not have happened if Benoit had possessed the basic qualifications... and if he had been adequately trained....
Roberts, 605 So.2d at 1042.
To suggest that this accident would have occurred without Godfrey's negligence is fanciful supposition. Godfrey's negligence was a cause-in-fact of the accident and resulting injuries.
Having found that Godfrey's breach of conduct was a cause-in-fact of the accident, we next explore the scope of duty question.
In Roberts, the Louisiana Supreme Court quoted with approval Malone, Ruminations on Cause-In-Fact, 9 Stan.L.Rev. 60, 73 (1956):
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken *580 by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.
Clearly, the scope of protection against a motorist running a stop sign protects this driver from this type of harm arising in this manner. We thus find that the jury and trial court were in error in rejecting plaintiffs' claim.
Mrs. Bannerman, who was an 81-year-old licensed driver, was suddenly struck and thrown about. At the accident scene, Mrs. Bannerman told Captain Wilmore that when struck, she lost control of her car. Obviously Mrs. Bannerman briefly lost focus due to the sudden shock of the collision. To speculate that a younger, healthier person may have reacted differently and more aggressively in avoiding the tree begs the question. The emergency situation was created entirely by the negligence of Kyle Godfrey, who must shoulder 100% of the fault.

DAMAGES
Having determined error, the appellate court is authorized by La.C.C.P. art. 2164 to render any judgment which is just, legal and proper. Gordon v. Willis Knighton Medical Center, 27,044 (La.App.2d Cir. 06/21/95), 661 So.2d 991.
In making an initial award of damages at the appellate level, we are not limited to either the lowest or highest amount we would affirm. Instead, we must determine an amount believed to be appropriate for the damages revealed by the record. Gordon, supra; Beckham v. St. Paul Fire & Marine Insurance, 614 So.2d 760 (La.App.2d Cir. 1993).
The major children of Mrs. Bannerman seek damages for her wrongful death. The elements of a claim for wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Gordon, supra; Mathieu v. State, Dept. of Transportation and Development, 598 So.2d 676 (La.App.3d Cir.1992).
Although Mrs. Bannerman's sons were grown and had moved away from home, the decedent managed to maintain a close and supportive relationship with each of them. All three sons testified at trial regarding the loss they sustained as a result of the death of their mother. We award plaintiffs, Ward Bannerman, Dempsey Bannerman and Paul Storey, $100,000 each for the wrongful death of their mother.[1]
The parties stipulated that Mrs. Bannerman's medical and funeral expenses were $210,656.48. We award this amount to Ward Bannerman in his capacity as executor of his mother's estate.
A court may also award damages for the pain and suffering of the decedent where there is evidence of pre-death pain or suffering on the part of the victim. Gordon, supra.
As a result of the accident, the 81-year-old Mrs. Bannerman sustained severe injuries, including multiple fractured ribs; a fractured sternum; a fractured right knee with an exposed patella and dislocated tibia; an open comminuted fracture of the right ankle with a partially severed Achilles tendon and dislocated foot; a dislocated right hip; a fractured pelvis; a blowout fracture of her right eye socket; and a flailed chest.
Upon her arrival at Vicksburg Medical Center, Mrs. Bannerman was experiencing difficulty breathing and was in shock. She was placed on a ventilator and heroic resuscitative efforts were required. Insertion of an endotracheal tube was also necessary. Mrs. Bannerman thereafter endured several complicated orthopedic surgeries and insertion of a naso-gastric tube.
Because of pulmonary problems, Mrs. Bannerman was transferred to St. Dominic's Hospital in Jackson, Mississippi. Further *581 surgical procedures were performed, including an endoscopy, which revealed blood in her stomach, attributed by her treating physician to aspiration caused by facial trauma (not from a bleeding stomach ulcer).
Approximately one month after the accident, Mrs. Bannerman could respond by opening her eyes and moving her upper extremities and she was able to breathe without the ventilator. Mrs. Bannerman was moved out of the intensive care unit, but her condition worsened and she was placed back in intensive care. Mrs. Bannerman died on March 7, 1992, approximately two and one-half months after the accident.
Cases are seldom exactly the same; therefore, damage awards are not standardized for particular types of injuries. Rather, damages are based on the individual facts of each case. Mrs. Bannerman suffered crushing injuries including fractures of the foot, ankle, knee, pelvis, ribs, sternum and face. She endured extreme pain and discomfort from the accident on December 26, 1991, until her death approximately two and one-half months later. We award Ward Bannerman, as executor of his mother's estate, the sum of $150,000 for Mrs. Bannerman's pain and suffering.[2]

JUDGMENT
In accordance with the foregoing:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Cabell Ward Bannerman, Dempsey E. Bannerman, and Paul L. Storey, and against defendants for the full sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS each, said sum representing damages for the wrongful death of Elizabeth A. Bannerman.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Cabell Ward Bannerman as Executor for the Estate of Elizabeth A. Bannerman and against defendants, in the sum of TWO HUNDRED TEN THOUSAND SIX HUNDRED FIFTY-SIX AND 48/100 ($210,656.48) DOLLARS, said sum representing medical and funeral expenses incurred on behalf of Elizabeth A. Bannerman, and the sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS, said sum representing damages for pain and suffering endured by Elizabeth A. Bannerman.
Costs of this appeal and below are assigned to defendants. REVERSED AND RENDERED.
SEXTON, J., dissents with reasons.
HIGHTOWER, J., dissents for the reasons set forth in the original majority opinion.
SEXTON, Judge., dissenting:
As is demonstrated in the original opinion, the record adequately supports the jury verdict. I suggest the majority inappropriately substituted its opinion for theirs.
NOTES
[*] Editor's Note: On rehearing, the analysis of the original dissent was adopted.
[1] These other jurors had previously been excused on other grounds.
[1] For similar cases involving awards to major children for the wrongful death of an elderly parent, see Jones v. St. Francis Cabrini Hospital, 94-2217 (La. 04/10/95), 652 So.2d 1331 ($100,000 each); Gordon v. Willis Knighton Medical Center, supra ($100,000 and $125,000); Faucheaux v. Terrebonne Parish Consolidated Government, 625 So.2d 683 (La.App. 1st Cir.1993) ($100,000 and $110,000); Riser v. American Medical International, Inc., 620 So.2d 372 (La.App. 5th Cir.1993) ($100,000 each); Rick v. State, Through Dept. of Transportation and Development, 619 So.2d 1149 (La.App. 1st Cir.1993) ($150,000 each).
[2] See Ly v. State Dept. Of Public Safety & Corrections, 92-1054 (La.App. 1st Cir. 11/24/93), 633 So.2d 197, writ denied, 93-3134 (La. 02/25/94), 634 So.2d 835 ($150,000). See also Jones v. St. Francis Cabrini Hospital, 94-2217 (La. 04/10/95), 652 So.2d 1331 ($122,000); Gordon v. Willis Knighton Medical Center, 27,044 (La.App. 2d Cir. 06/21/95), 661 So.2d 991, writs denied, 95-2776 (La. 01/26/96), 666 So.2d 679 ($60,000); Watkins v. Bethley, 27, 554 (La.App.2d Cir. 11/01/95), 662 So.2d 839, writs denied, 95-2848 (La. 02/02/96), 666 So.2d 1107 ($55,000); Jones v. Payton, 548 So.2d 1260 (La.App. 4th Cir.1989), writs denied, 550 So.2d 616, 617 (La.1989) ($100,000).