■ ANA PEREZ, Respondent, v. CITY OF NEW YORK, Appellant.— Judgment, Supreme Court, New York County, entered May 10, 1973, after a jury trial, affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal. Plaintiff slipped off a diving board in a city pool on East 23rd Street. Inasmuch as she testified, and there is no contradictory evidence, that she was barefoot and her feet were free of any slippery or foreign substance, and there is no indication that she was in any way interfered with, the only question was whether the surface of the diving board was properly maintained by having a covering which would prevent skidding. The city used a bright yellow paint, which it contended was a "non-skid paint". The plaintiff presented a safety engineer with a degree in mechanical engineering who had worked for the Bell System for 32 years and whose work included provision for making flooring safe for people who use them. His qualifications were carefully examined by the Trial Judge. He testified over objection that no paints were acceptable, from a safety engineering point of view, on a diving board, because the water acts as a lubricant. The city presented no witness who knew the ingredients and the chemical factors of the paint. The director of mechanical equipment for the Department of Parks, who knew nothing of the condition of the diving board in question, testified that a "non-skid paint" was used, but he had no knowledge as to whether it had been applied in accordance with the instructions to achieve the alleged nonskid effect. The patrolman at the scene stated that the diving board "felt coarse" to his *hand* (not his foot). Under all of the circumstances, the jury determination for the plaintiff should not be disturbed. Concur — Nunez, J. P., Kupferman and Lane, JJ.; Murphy and Capozzoli, JJ., dissent in the following memorandum by Capozzoli, J.: The basis of the plaintiff's case is that she slipped from a diving board at a swimming pool maintained by the city. The specific negligence upon which she relies is that the defendant negligently maintained the board, because it had painted it, thereby making it slippery and dangerous. Ordinarily there should be no difficulty with anyone, who claims to have slipped from a particular place, to express that simple thought. In examining the rec-

ord we find that the plaintiff herself was uncertain as to how the accident really happened. Her testimony was not only uncertain and indefinite, but also contradictory and confusing. In describing how the accident happened she testified: " A. I got up to the board and it was bright yellow. It had just been painted with what looked like bright yellow shiney paint, and I noticed it particularly because it was a very clear sunny day and the color was very bright. * * * Q. Will you tell us what you did? A. I waited my turn. I had to wait. Eight or ten people were in front of me. * * * A. I waited my turn on line to dive and then when it got to my turn, I got up on the board and I walked out on it and then I began to go into the approach to a dive and I slipped." There is the following: " Q. Now, when you fell, you said that you slipped with your right foot; your right foot slipped? A. Yes, I *think* that's what happened." (Emphasis supplied.) In the course of her cross-examination she was questioned as follows: " Q. Now, let me ask you this, ma'am: did you notice whether or not the board was slippery? A. Not that I noticed, no. * * * Q. Yes. Did you notice whether or not it was slippery? A. You would have to define what you mean by 'slippery' for me. The Court: Well, to you, would it appear slippery on the foot as you walked upon it? The Witness: Not that much, no." Following this, defendant's counsel directed plaintiff's attention to her examination, under oath, before the Comptroller of the City of New York. " Q. As a matter of fact, you were examined before the Comptroller of the City of New York under oath on September 29 of 1966, right, where you took an oath to tell the truth, and at that time did you not, were you not asked this question and did you give this answer: Page 4, second question from the top: 'Q. Did you notice if the board was slippery? A. No.' Were you asked that question and did you give that answer? A. Yes. Q. And it represented the truth then, didn't it? A. Yes. Q. And it represents the truth now? A. Yes." Later, during her recross-examination she was again asked: — " Q. And also there is no question in your mind that you didn't notice, on the day in question, that the board was slippery; is that correct? A. Yes." In connection with this testimony relating to the subject of slipperiness, it is noteworthy that the police officer, who was at the scene of the accident, and who questioned the plaintiff, testified: " A. She [plaintiff] simply stated she lost her footing." He also testified that he got up on the diving board after the accident and rubbed his hand on the board and it felt coarse. The testimony of the expert added nothing to the case and was completely negative. He did not inspect the diving board at any time, had no knowledge of what its surface looked like, nor did he have any familiarity with the nature of the paint used by the city in its maintenance of the diving board. In effect, the expert's testimony was based on speculation, assumptions and his general knowledge and not on the specific facts of this case, especially as to the paint used on the diving board and its specific characteristics. This judgment should not be permitted to stand as it is based on pure speculation and surmise; further, it is clearly against the weight of the credible evidence. It could only be sustained if we were to regard the defendant, city, as an insurer of the safety of all those who used the swimming pool. For the reasons given, the verdict of the jury should be set aside and the complaint dismissed.