OPINION OF THE COURT
Fisher, J.P
On this appeal, we are called upon to reexamine a line of authority dealing with the liability of property owners who, by applying wax, polish, or paint to a floor, make it dangerously slippery. We are also presented with the more general but related question of whether a defendant may be held liable for having unknowingly created a dangerous or defective condition on property. We hold that, absent a statute imposing strict liability, a defendant may not be held liable for creating a dangerous or defective condition upon property unless the defendant had actual, constructive, or imputed knowledge of the danger created.
*373 The facts here are largely undisputed.
Dattilo Petroleum, Inc. (hereinafter Dattilo) was the owner of a Texaco gasoline station and convenience store located on Dolson Avenue in Middletown, Orange County. Dattilo leased the premises to Super Value, Inc. (hereinafter Super Value), which ran the business. In 2003, Super Value and Dattilo agreed to convert, or “re-image,” the Texaco station to a Shell station. The conversion required, among other things, the repainting of several areas of the station with colors specified by Shell Oil Company and Shell Oil Products Company, LLC (hereinafter together Shell). Among the areas to be repainted was the curb outside the convenience store. To effect the conversion, Dattilo and Super Value contracted with Image Point, Inc. (hereinafter Image Point), a company specializing in the conversion of gasoline stations from one brand to another. Image Point, in turn, hired a painting subcontractor, TC Industrial Painting, Inc. (hereinafter TC Industrial). TC Industrial purchased paint from Ameron International (hereinafter Ameron). The paint it used for the curb outside the convenience store was “Americoat 450 HSA Shell Station number 51 RVI dark gray resin with cure” (hereinafter Americoat 450-SS51), a “two part polyurethane” paint. Image Point and TC Industrial would later claim that Shell had required the use of Americoat 450-SS51 paint and that it be purchased from Ameron. Shell, however, claimed that, although it specified that the paint be purchased from Ameron, it gave the contractors a choice of three acceptable paint products, only one of which was Americoat 450-SS51.
On the morning of July 14, 2004, a misty day with a light rain falling, 21-year-old Kimberly Walsh, a licensed practical nurse and office manager on her way to work, stopped at the station’s convenience store to purchase water. Upon leaving the store, she slipped on the painted curb and fell, sustaining a torn left meniscus that required two surgeries to repair.
Walsh commenced a personal injury action against Super Value, Dattilo, Image Point, TC Industrial, and Shell. Super Value, Dattilo, and Shell commenced a third-party action against Image Point, which, in turn, commenced a second third-party action against TC Industrial.* The defendants each moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against them. The Supreme Court, among other things, *374 granted those branches of the respective motions. Walsh appeals.
In granting the motions, the Supreme Court relied on a long line of authority dealing with slip-and-fall injuries caused by slippery floors. Specifically, the court interpreted a succession of cases as holding that a property owner’s application of wax, polish, or paint to a floor, making the floor slippery, will not support a negligence action unless the manner of application was itself negligent (see e.g. Kociecki v EOP-Midtown Props., LLC, 66 AD3d 967 [2009]; German v Campbell Inn, 37 AD3d 405 [2007]; Rodriguez v Kimco Centereach 605, 298 AD2d 571, 571-572 [2002]; Larussa v Shell Oil Co., 283 AD2d 403 [2001]; Werner v Neary, 264 AD2d 731 [1999]; Mroz v Ella Corp., 262 AD2d 465 [1999]; see also Crawford v Jefferson House Assoc., LLC, 57 AD3d 822, 823 [2008]; Nelson v Salem Danish Lutheran Church, 270 App Div 1030 [1946], affd 296 NY 870 [1947]; cf. Murphy v Conner, 84 NY2d 969, 971-972 [1994]; Kline v Abraham, 178 NY 377, 380 [1904]).
Walsh argues that these cases do not stand for any such broad proposition. She contends that, instead, they were decided based on a failure of the plaintiff in each case to offer expert evidence sufficient to raise a triable issue of fact as to whether the floor had, in fact, been rendered so slippery as to constitute a dangerous or defective condition. Walsh maintains that, in contrast, the expert evidence she submitted provided information, inter alia, regarding the reduced coefficient of friction of the painted curb as measured against a widely accepted standard (see ADA Accessibility Guidelines for Buildings and Facilities [ADAAG] § 4.5, Appendix A4.5.1, 28 CFR part 36, Appendix A [Ground and Floor Surfaces]) and therefore clearly raised a triable issue of fact as to whether the application of Americoat 450-SS51 to the curb created a dangerous or defective condition.
Although we agree that the expert affidavit Walsh submitted was sufficient to raise a triable issue of fact as to whether a dangerous or defective condition was created (cf. Perez v City of New York, 44 AD2d 514 [1974], affd 36 NY2d 657 [1975]), we do not agree that the cases relied on by the Supreme Court turned exclusively on insufficiency of expert evidence. Rather, the cases stand for the proposition that the application of wax, polish, or paint to a floor in a nonnegligent manner will not, standing alone, support a negligence cause of action for making the floor slippery. We think, however, that the question of whether the wax, polish, or paint was in fact applied in a nonnegligent man *375 ner depends, in part, on the knowledge of those who cause the wax, polish, or paint to be applied. Thus, for example, someone who knowingly makes a floor dangerously slippery by causing wax, polish, or paint to be applied acts negligently and is not shielded by the rule regardless of the manner in which the substance was applied. Indeed, the defendants’ knowledge— actual, constructive, or imputed—lies at the very heart of the issues presented in this case, and, more broadly, at the core of most cases involving premises liability.
An owner of property has a duty to maintain his or her premises in a reasonably safe condition (see Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]; Basso v Miller, 40 NY2d 233, 241 [1976]), and here that duty included providing a reasonably safe means of ingress and egress to and from the convenience store (see Peralta v Henriquez, 100 NY2d 139, 143 [2003]; Gallagher v St. Raymond’s R.C. Church, 21 NY2d 554, 557 [1968]; Backiel v Citibank, 299 AD2d 504, 506-507 [2002]). The familiar formulation of the law of premises liability is that
“[i]n order for a landowner to be liable in tort to a plaintiff who is injured as a result of an allegedly defective condition upon property, it must be established that a defective condition existed and that the landowner affirmatively created the condition or had actual or constructive notice of its existence” (Lezama v 34-15 Parsons Blvd, LLC, 16 AD3d 560, 560 [2005]; see Fontana v R.H.C. Dev., LLC, 69 AD3d 561 [2010]; Bodden v Mayfair Supermarkets, 6 AD3d 372, 373 [2004]).
A landowner has constructive notice of a dangerous or defective condition on property when the condition is visible and apparent, and has existed for a length of time sufficient to afford a reasonable opportunity to discover and remedy it (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]; Davis v Rochdale Vil., Inc., 63 AD3d 870, 870-871 [2009]; Latalladi v Peter Luger Steakhouse, 52 AD3d 475, 476 [2008]). Thus, in cases where an owner is not alleged to have created the dangerous or defective condition, liability may nevertheless be predicated on the owner’s failure to remedy the condition despite notice and sufficient time to do so (see Perlongo v Park City 3 & 4 Apts., Inc., 31 AD3d 409, 410 [2006]; Birthwright v Mid-City Sec., 268 AD2d 401 [2000]).
On the other hand, where liability is predicated on the owner’s creation of a dangerous or defective condition, it has *376 been said that “usual questions of notice of the condition are irrelevant” (Cook v Rezende, 32 NY2d 596, 599 [1973]; see Ohanessian v Chase Manhattan Realty Leasing Corp., 193 AD2d 567 [1993]). In our view, however, “usual questions of notice” are irrelevant in “creation” cases only because an owner who creates a dangerous or defective condition usually knows about it (see Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 249 [1984], affd for reasons stated below 64 NY2d 670 [1984]). But not always. It is possible, even for a reasonable person acting reasonably, to create a dangerous or defective condition without realizing it, and to remain ignorant of it for a period of time. Our system of tort law is generally predicated on fault, attaching liability for the breach of a duty owed and a departure from the expected behavior of reasonable persons (see generally Prosser, Torts § 75, at 492-496 [4th ed]; cf. Basso v Miller, 40 NY2d at 241 242). Thus, except where, for policy reasons, the law imposes strict liability (see e.g. Voss v Black & Decker Mfg. Co., 59 NY2d 102, 106 [1983] [products liability]; State of New York v Green, 96 NY2d 403, 406 407 [2001] [discharge of petroleum in violation of Navigation Law § 181 (1)]; Spano v Perini Corp., 25 NY2d 11, 15 [1969] [blasting activity]; cf. Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 286-289 [2003] [Labor Law § 240 (1) nondelegable duty, but not strict liability]), an owner should be held liable for the creation of a dangerous or defective condition on property if a reasonable person in the owner’s position would have known, or would have had reason to know, of the danger created, or would have had such knowledge imputed by operation of law.
Here, each of the defendants was responsible, either directly or vicariously, for the application of Americoat 450-SS51 to the curb. There was evidence that Shell directed the use of that paint; Dattilo and Super Value, the owner and lessee respectively, contracted for the repainting required for the conversion of the gasoline station; Image Point accepted the contract to convert the station and brought in TC Industrial, the painting subcontractor, which purchased and actually applied the paint. However, Dattilo, Super Value, Image Point, and TC Industrial submitted evidence establishing prima facie that they did not know, or have reason to know, that Americoat 450-SS51 paint, which was distributed by Ameron and approved for use by Shell, was or might be dangerously slippery when applied to a curb, or know of any other accidents related to the application of Americoat 450-SS51. And none of these defendants had knowledge of *377 the alleged danger imputed to it by operation of law. These defendants, therefore, established their prima facie entitlement to judgment as a matter of law by showing that, prior to the accident, a reasonable person in their position would not have known, and would not have had reason to know, that painting a curb with Americoat 450-SS51 would create a dangerous or defective condition (cf. Beyda v Helmsley Enters., 261 AD2d 563, 564-565 [1999]). In opposition, Walsh failed to raise a triable issue of fact. Her submissions did not address whether any or all of the defendants were chargeable with actionable knowledge of the allegedly dangerous condition created by the application of Americoat 450-SS51, and she made no showing as to why or how they should have been alerted to the danger. Consequently, the Supreme Court properly granted those branches of the respective motions of Dattilo, Super Value, Image Point, and TC Industrial which were for summary judgment dismissing the complaints insofar as asserted against them.
In contrast, Shell failed to establish its prima facie entitlement to judgment as a matter of law. Although there was evidence that Shell required the use of Americoat 450-SS51, and Shell itself admitted that it specified that paint as one of three acceptable products, it offered no evidence regarding its own knowledge of the characteristics and properties of the paint, and, unlike the other defendants, made no showing of a lack of knowledge as to any other accidents involving the paint it designated for use. Accordingly, that branch of Shell’s motion which was for summary judgment dismissing the complaint insofar as asserted against it should have been denied regardless of the sufficiency of the plaintiffs papers submitted in opposition (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]), and we modify the order accordingly.
Shell’s remaining contention is without merit.
Accordingly, the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Shell Oil Company and Shell Oil Products Company, LLC, which was for summary judgment dismissing the complaint insofar as asserted against them, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from.
Balkin, Hall and Austin, JJ., concur.
Ordered that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants Shell Oil Company and Shell Oil Products Company, *378 LLC, which was for summary judgment dismissing the complaint insofar as asserted against them, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from; and it is further,
Ordered that one bill of costs is awarded to the defendants Dattilo Petroleum, Inc., Super Value, Inc., and Image Point, Inc., appearing separately and filing separate briefs, payable by the plaintiff, and one bill of costs is awarded to the plaintiff, payable by the defendants Shell Oil Company and Shell Oil Products Company, LLC.

 Neither the manufacturer nor Ameron was named as a defendant in any of the actions.