**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3939
_____

MARY ELIZABETH JORDAN FLICKINGER, O.D. and JAMES BRADLEY
FLICKINGER, O.D., Individually and as Parents and Natural Guardians of D.J.F., a
minor, and J.B.F., a minor,
Appellants

v.

TOYS "Я" US-DELAWARE, INC.,
Appellee.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:10-CV-00305)
District Judge: Hon. A. Richard Caputo

_____

Submitted under Third Circuit LAR 34.1(a)
June 22, 2012

Before: AMBRO, VANASKIE and ALDISERT Circuit Judges.

(Filed: July 5, 2012)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

The Flickingers appeal the judgment in favor of Toys "Я" Us, entered by the United States District Court for the Middle District of Pennsylvania on September 28, 2011, after a jury returned a verdict finding no negligence and no liability on the part of Toys "Я" Us. The Flickingers now challenge six decisions made by the District Court during the trial. For the reasons that follow, we will affirm the District Court's judgment.

I.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in the District Court, we will revisit them only briefly.

A.

Dr. Mary Flickinger, along with her two sons, was a customer at the Toys "Я" Us flagship store in Times Square, New York City, on October 26, 2008. The store opened at 10 a.m. Around 2 p.m., she sought to do what many had done before her that day—serve herself some M&Ms from the M&Ms Colorworks display in the store's Candyland department. The M&Ms bin she approached had received "[q]uite a bit of usage" that morning before Dr. Flickinger attempted to use it.[1] App. 01884. The display is designed for self-service and is equipped with a lever that, when pulled, dispenses M&Ms into a plastic bag. Dr. Flickinger did not see any visible sign that the display was broken nor did any of the bins appear to be out of order. But when she pulled the handle for the blue M&Ms bin, nothing came out. Dr. Flickinger pulled on the handle a second time, and the bin fell from the display shelf and struck her on the head and upper body. The container was intact after it fell and there were no broken pieces. Toys "Я" Us has not since experienced another incident like this.

B.

---

[1] Millions of customers per year had access to the M&Ms Colorworks display and thousands used it each day.

The Flickingers sued Toys "Я" Us, alleging that the store was negligent in not properly securing the bin to the display and, in the alternative, failed to maintain, properly secure, and inspect the bin as to prevent it from falling and injuring Dr. Flickinger. A seven-week jury trial ensued.[2] At the close of the trial, the jury deliberated for one hour and returned a verdict for Toys "Я" Us, finding that the store was neither negligent nor liable. The Flickingers filed this timely appeal.[3]

## II.

The Flickingers challenge six decisions made by the District Court. They first test the jury instructions contending that the Court erred by: (1) providing conflicting instructions; (2) misstating New York state law; and (3) failing to instruct on the doctrine of *res ipsa loquitur*. Appellants next argue that the District Court exceeded its discretion by: (4) excluding part of Dr. Flickinger's testimony; (5) allowing Toys "Я" Us employees to testify as to the self-service nature of the display; and (6) excluding certain testimony and evidence from expert witnesses as well as testimony from lay witnesses. For the reasons that follow, we will affirm the District Court's judgment.

## A.

The Flickingers challenge the jury instructions on multiple fronts, contending that the District Court erred by: (1) providing the jury with conflicting instructions regarding the law on premises liability; (2) misstating New York law in its final jury instruction on premises liability; and (3) failing to instruct the jury on the doctrine of *res ipsa loquitur*.

---

[2] This case, moreover, had extensive pre-trial proceedings, including 63 pre-trial motions, 34 motions *in limine* and six Daubert motions to exclude experts.

[3] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

"We review the refusal to give a particular instruction or the wording of instructions for abuse of discretion," United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006) (citation omitted), and exercise plenary review over the legal standards set forth in jury instructions, see United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997) (citation omitted). We reject each of Appellants' contentions in turn.

1.

The Flickingers first assert that the District Court exceeded its discretion by providing two different jury instructions that confused the jury. We find no merit in this claim. At the beginning of the trial, Judge Caputo—using Third Circuit Model Jury Instruction 1.2, entitled "Preliminary Instructions"—gave the jury a cursory overview of the claims and applicable law, with the caveat that these instructions were "preliminary" and that he would be giving "detailed instructions of the law at the end of the case, and those instructions will control your deliberation." App. 00651-00652. He reiterated that "once the closing arguments are completed I will instruct you on the law." App. 00663. After the close of evidence, Judge Caputo provided the jury with detailed instructions on the law, which he recorded and provided to the jury to use during deliberations. The final jury instructions contained an explanation of the phrase "created the unsafe condition," which included a requirement of actual or constructive notice on the part of Toys "Я" Us. This explanation was not part of the preliminary jury instructions.

After reviewing the record, we conclude that the District Court did not exceed its discretion by providing jury instructions at both the beginning and end of the trial. Indeed, it is common practice for trial judges to provide juries with preliminary instructions at the outset of a trial followed by complete and detailed instructions at the end of the case as warranted by the evidence presented. See United States v. Hernandez,

176 F.3d 719, 735 n.10 (3d Cir. 1999) ("Our holding today is not intended to discourage the very common practice of providing jurors with preliminary remarks to assist them during the course of the trial."). "[W]hen such preliminary instructions are given, jurors must not be allowed to guess at which of two conflicting instructions control their deliberations." Id. "This can be avoided by simply informing jurors which instructions control in the event they perceive a conflict . . . ." Id. The District Court prevented any confusion from occurring by not only explaining that the first set of instructions was "preliminary," but also by expressly stating that he would be giving "detailed instructions of the law at the end of the case, and *those instructions will control your deliberation*." App. 00650-00652 (emphasis added). We conclude, therefore, that there was not a "reasonable likelihood that jurors" were confused about which instructions controlled their deliberations. Hernandez, 176 F.3d at 735.[4]

2.

The Flickingers contend, moreover, that the District Court's final jury instruction on the law of premises liability misstated New York state law because it relied on Walsh v. Super Value, Inc., 76 A.D.3d 371 (N.Y. App. Div. 2010). But this argument is based on several flawed assumptions. The Flickingers first argue that Walsh should not control

---

[4] The Flickingers argue also that they were prejudiced by the District Court's final instructions because they relied on the Court's preliminary instructions in electing not to offer evidence that Toys "Я" Us was on actual or constructive notice of the M&Ms container's allegedly hazardous condition. We reject this argument. Not only did Appellants offer testimony from numerous witnesses in an effort to establish actual or constructive notice, but any withholding of evidence (that has yet to be specified) was a strategic decision made with knowledge that: (1) the judge would be providing the jury with detailed instructions at the end of the case that would control deliberations; (2) the jury charge conference mandated by Rule 51(b) of the Federal Rules of Civil Procedure had not yet occurred and could change the jury instructions; and (3) Toys "Я" Us was arguing for a charge that required notice to impose liability.

because the "rule" it announced was merely dicta contained in an unpublished slip opinion. Not only is Walsh a published opinion,[5] but the rule announced in it was, indeed, *the* holding: "*We hold* that, absent a statute imposing strict liability, a defendant may not be held liable for creating a dangerous or defective condition upon property unless the defendant had actual, constructive, or imputed knowledge of the danger." Id. at 372 (emphasis added).

The Flickingers are wrong to suggest, moreover, that Walsh is not binding simply because it was decided by an intermediate appellate court. "In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts." Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008). Because only the intermediate appellate court had addressed the scenario confronted by the District Court here—where a defendant could have created a condition and been unaware of it—it was entirely appropriate for the Court to rely on Walsh. Indeed, requiring actual or constructive notice here was all the more appropriate, because there was no direct evidence that any employee of Toys "Я" Us created the hazardous condition of the M&Ms bin not being secured in place. We therefore conclude that the District Court did not err when instructing the jury on New York premises liability law.

### 3.

Appellants assert, furthermore, that the District Court erred by failing to instruct the jury on the doctrine of *res ipsa loquitur*. Because Appellants could not establish one of the required elements of the doctrine—that Toys "Я" Us had "exclusive control" over the M&Ms bin—we conclude that the District Court did not err in determining that the theory was inappropriate. See Dermatossian v. N.Y.C. Transit Auth., 67 N.Y.2d 219,

---

[5] Perhaps confusion arose because Westlaw initially gives *all* opinions a "Slip Op." citation.

226-227 (1986); see also St. Paul Fire & Marine Ins. Co. v. City of N.Y., 907 F.2d 299, 303 (2d Cir. 1990) ("[T]o invoke the doctrine of *res ipsa loquitur*, the plaintiff must establish control by the defendant of sufficient exclusivity to fairly rule out the chance that the injury was caused by some agency other than defendant's negligence." (internal quotation marks and citations omitted)).

The "exclusive control" requirement is not a "rigid concept." Pavon v. Rudin, 254 A.D.2d 143, 145 (N.Y. App. Div. 1998) (internal quotation marks and citation omitted). Indeed, the evidence need afford only "a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it," Dermatossian, 67 N.Y.2d at 227 (internal quotation marks and citations omitted). But it is equally true that an instrumentality's continuous availability for public use is a "crucial fact" that can defeat a plaintiff's exclusive control claim. Id. at 228; see also Meegan v. Westbury Prop. Inv. Co., 234 A.D.2d 433, 433 (N.Y. App. Div. 1996) (holding that a *res ipsa loquitur* instruction was unwarranted because "the general public had unfettered access to the display"). Here, Appellants conceded that the location of the incident—Toys "Я" Us's flagship store in the middle of Times Square in New York City—is a "very popular tourist destination," App. 02744, and their expert witness conceded that millions of people each year walk through the store, see App. 01001-01002. The M&Ms display, itself, is interactive and, as a self-serve display, is handled by the public every day.

The case law is clear: where a defendant's instrumentality that gives rise to an injury is handled by the public, especially in a retail setting, the defendant cannot be found to have been in exclusive control of the instrumentality for the purposes of

7

applying *res ipsa loquitur*. We therefore conclude that the District Court did not err in failing to provide the jury with instructions on that theory.

B.

The Flickingers next challenge several decisions by the District Court regarding the admission of testimony and evidence at trial. "A district court judge is granted broad discretion in determining what is admissible under the Federal Rules of Evidence. . . . [I]n order to reverse a district court judge's evidentiary ruling, [we] must determine if the district court abused its discretion." Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1001 (3d Cir. 1988). Appellants argue that the District Court exceeded its discretion by: (1) excluding part of Dr. Flickinger's testimony as inadmissible hearsay; (2) allowing Toys "Я" Us employees to testify as to the self-service nature of the display; and (3) excluding testimony and evidence from expert witnesses as well as testimony from lay witnesses. For the reasons that follow, we reject each contention.

1.

The Flickingers first contend that the District Court exceeded its discretion by excluding testimony by Dr. Flickinger that, before her accident, an unidentified person wearing a blue shirt approached her and stated, "Ma'am, may I help you, we've been having some trouble with these." App. 02463. Because the testimony is inadmissible hearsay, we conclude that the District Court did not exceed its discretion by excluding it.

Appellants raise three arguments as to why the testimony should have been admitted; none is persuasive. The Flickingers first argue that the testimony was not being offered for the truth of the matter asserted, but was instead offered to show that Toys "Я" Us had constructive notice. This argument will not save the day. At most, the statement would tend to show notice that the M&Ms dispenser was jammed—which evidence

8

demonstrated had occurred in the past—but not notice that the entire bin would fall out of the display—something that had never occurred, either before or after this accident.

Appellants next assert that the testimony is admissible under Rule 801(d)(2)(D)'s exception for a statement made "by a party's agent or employee." To qualify, the statement must (1) be made by an employee, and (2) concern a matter within the scope of the declarant's employment. See Blackburn v. United Parcel Serv., 179 F.3d 81, 97 (3d Cir. 1999). Because the declarant here was unidentifiable, the Court "did not have a sufficient evidentiary foundation to establish the existence of an agency relationship as required under Rule 801(d)(2)(D)." Zaken v. Boerer, 964 F.2d 1319, 1324 (2d Cir. 1992); see also Carden, 850 F.2d at 1003 (excluding hearsay statement of unidentified declarant alleged to be employee of defendant and explaining that "declarations of unidentified persons are rarely admitted. . . . due in part to the heavy burden which rests on the proponent of the evidence" (citation omitted)).

The Flickingers argue that, in the alternative, the statement is admissible under Rule 803(1) as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." But the unidentified declarant's statement—"we've been having trouble with these"—failed to describe or explain an event or condition happening at that moment. Rather, the statement gave a historical account of the bin. The District Court correctly noted, moreover, that "there is no indication from the statement that the declarant personally witnessed this 'trouble' or rather heard about it second-hand." App. 02464. The District Court's exclusion of this statement was therefore not an abuse of its broad discretion.

2.

The Flickingers next argue that the District Court exceeded its discretion by allowing two Toys "Я" Us employees to testify about their firsthand observations of customers using the M&Ms bin at issue here. These two employees testified that they had seen customers hanging on the levers and punching the machine. We conclude that the District Court did not exceed its discretion by admitting this testimony under Rule 401, because this testimony was relevant to the issue of whether Toys "Я" Us had exclusive control under the *res ipsa loquitur* theory the Flickingers pursued.[6]

We similarly reject Appellants' contention that this testimony should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. In admitting the testimony, the Court granted the Flickingers' request for a limiting instruction to the jury, which warned that they were not to consider the testimony as evidence that such things happened on the day in question nor that the Flickingers, themselves, had behaved in such a manner. We therefore conclude that the District Court did not exceed its broad discretion by admitting this relevant testimony.

3.

Finally, the Flickingers contend that the District Court erred in excluding certain testimony and evidence from expert witnesses as well as admissions by Toys "Я" Us employees. We conclude that, in each instance of exclusion, the District Court did not exceed its permissible discretion.

a.

Appellants assert that it was error for the District Court to strike paragraphs in expert reports rendering legal conclusions, and to prohibit experts from testifying as to those legal conclusions at trial. The Flickingers argue that Rules 702 and 704 allow

---

[6] At the time the testimony was introduced, the District Court had not yet ruled on Appellants' request for a *res ipsa loquitur* instruction.

experts to render legal opinions, because they permit experts to testify as to the governing law of the case. This is a misstatement of the law. "Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) (quoting United States v. Leo, 941 F.2d 181, 195-196 (3d Cir. 1991)). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." Id. (citation omitted).

Here, the District Court allowed testimony to demonstrate that Toys "Я" Us was the only entity that filled the bin or maintained it. It also allowed testimony showing that many other people had access to it. This gave the jury the information needed to determine whether Toys "Я" Us had "exclusive control." But the Court did not allow experts to provide testimony using the legal phrase, "exclusive control." Similarly, the paragraphs excluded by the Court in the experts' reports offered legal opinions as to "exclusive control," "dangerous condition," "substantial cause," and "negligence." These phrases are legal terms of art that courts commonly hold cannot be the subject of expert testimony. See 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 704.04[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011). The District Court therefore did not exceed its discretion in prohibiting this testimony and evidence from reaching the jury.[7]

---

[7] The Flickingers argue, moreover, that the District Court erred in sustaining certain objections made by Toys "Я" Us during testimony of two experts for the Flickingers. Although Appellants fail to identify the decisions they challenge, they do cite to pages of the Appendix relaying the testimony of these experts. After reviewing these pages, we conclude that the District Court had many bases for sustaining the objections made. Many of the objections were sustained because the Flickingers tried to elicit legal opinions from these experts, which Rule 704 prohibits. Other objections were sustained because counsel

11

b.

The Flickingers assert that the District Court erred in sustaining certain objections made during the cross-examination of Toys "Я" Us employees. Although, once again, Appellants fail to identify the decisions they challenge, they do cite pages of the Appendix relaying the testimony of these lay witnesses. After reviewing these pages, we conclude that these challenges are meritless.

Many of the objections were sustained as well because the question sought improper testimony rendering a legal opinion. Courts have made clear that "where the opinion proffered necessarily encompasses a legal conclusion, a trial court may very properly conclude that a response would not be helpful to the trier of fact." United States v. Ness, 665 F.2d 248, 250 (8th Cir. 1981) (citation omitted). Other objections were sustained because the questions called for speculation, and the witness lacked the personal knowledge necessary under Rule 701(a) to answer them. Still other objections were sustained because the question had already been asked and answered. This objection is commonly sustained to (1) prevent opposing counsel from harassing the witness and (2) prevent cumulative presentation of evidence. See Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 610 (3d Cir. 1995). We therefore conclude that the District Court did not exceed its discretion by sustaining these objections.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.

---

asked leading questions on direct examination—forbidden by Rule 611—or asked questions calling for speculation—prohibited by Rule 602. The District Court, thus, did not exceed its discretion in sustaining these objections.