20-4293-cv

IN THE

# United States Court of Appeals

# For the Second Circuit

AUGUST TERM, 2021

SUBMITTED: SEPTEMBER 2, 2021
DECIDED: DECEMBER 28, 2021

No. 20-4293-CV

CARMEN BORLEY,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

————

On Appeal from the United States District Court
for the Eastern District of New York

————

Before: WALKER, CALABRESI, AND LOHIER, *Circuit Judges.*

————

Carmen Borley appeals from a ruling of the District Court for the Eastern District of New York (Denis R. Hurley, Judge), granting summary judgment to the United States pursuant to Federal Rule of Civil Procedure 56.

Summary judgment vacated and case remanded by opinion filed this date.

———————————————

Joel L. Levine, Levine & Wiss, PLLC, West Hempstead, NY, *for Plaintiff-Appellant.*

Varuni Nelson, Diane C. Leonardo, Assistant United States Attorneys, *for* Mark J. Lesko, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendant-Appellee.*

———————————————

CALABRESI, *Circuit Judge*:

A shopper tripped over a metal rod at a military commissary store and sustained injuries. She sued the U.S. government, under the Federal Tort Claims Act, for the store's negligence. The district court found that under New York law (the governing substantive law in this case), no reasonable jury could have found the store liable for the shopper's injuries. It therefore granted the government's motion for summary judgment. Because this finding was erroneous, we vacate the district court's judgment and remand for further proceedings.

**BACKGROUND**

On October 17, 2015, Carmen Borley and her husband went shopping at the Mitchel Field Commissary, a U.S. military commissary in Garden City, New York. When leaving the store, Borley tripped over a low metal bar, sustaining injuries.

The commissary had two sets of doors, placed next to each other. The "regular" set of doors had two panels, which could be set to open and close automatically during business hours. These doors were the commissary's entrance and exit for customers.

Immediately abutting the regular doors was a second, "emergency" set of doors. While structurally similar to the regular doors, these emergency doors were meant to be kept closed. Just inside of the emergency doors, a low metal bar, roughly ankle high, ran parallel to the ground.

The emergency doors had a red sign stating: "in emergency push to open." A second label, printed in yellow and black, was also on the doors. That label stated "caution" or "cautious," but made no mention of any metal bars or railings. Significantly, when the emergency doors were open, they folded against the building's exterior. With the doors so folded, neither the red warning label nor any other warning would have been directly visible from inside the store.

Patricia Ward was the manager on duty at the commissary during Borley's accident. She testified that, as a practice, she and her staff did not open the emergency doors. But the doors would come open easily, and would do so, for instance, if a customer pushed a shopping cart into them. Accordingly, as Ward testified, the emergency doors did come open roughly once a day. Ward further stated that she and her staff would periodically check to see if the emergency doors had come open, and, if so, would then reclose them.

On the afternoon of the accident, after finishing her shopping, Borley walked toward the commissary's exit. Although the employees had not opened the emergency doors, at least one door had nonetheless come open. As Borley approached the exit, she was talking to (and looking at) a couple she had met. The group walked three abreast, with the couple headed toward the regular doors, and Borley toward the emergency doors. As she passed through the emergency doors, she tripped over the metal bar and injured her head.

Borley brought a tort action against the U.S. government pursuant to the Federal Tort Claims Act. 28 U.S.C. § 1346(b)(1). After discovery, the government moved for summary judgment. The district court granted this motion, finding that, as a matter of New York law, no reasonable jury could have found that the

commissary had actual or constructive notice of the dangerous condition presented by the open emergency door (and the low metal bar). Borley appealed.

**STANDARD OF REVIEW**

We review a district court's grant of summary judgment de novo. *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006).

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). We therefore must view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in her favor. *See Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 78 (2d Cir. 2020). Put another way, "[s]ummary judgment is appropriate [only] [w]here the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (third alteration in original, internal citation omitted).

**DISCUSSION**

The Federal Tort Claims Act (FTCA), pursuant to which Borley brings her suit, gives federal courts jurisdiction over civil actions against the United States for negligence "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, in an FTCA action, "courts are bound to apply the law of the state . . . where the [tort] occurred" — in this case, New York. *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2000).[1]

Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981). In this case, the "duty" at issue is the commissary's common-law responsibility to show due care to customers by "maintain[ing] its premises in a reasonably safe condition."

---

[1] Under the FTCA, only the United States is liable; the negligent agent or employee of the United States is not subject to liability. *See* 28 U.S.C. § 2679(b)(1). This, of course, differs from ordinary principles of state tort law. *See Restatement (Third) of Agency* § 7.01 (2006).

*Kellman v. 45 Tiemann Assocs., Inc.*, 87 N.Y.2d 871, 872 (1995) (internal quotation and citation omitted).

While the definition, and hence the existence, of a duty relationship is usually a question for the court, whether the defendant's conduct breached that duty is most often a jury question.[2] In slip-and-fall cases, as both sides agree, to show a "breach of duty," a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness. *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125 (2d Dep't 2010).

---

[2] Of course, there is an "age-old debate as to when it is appropriate for a court to decide" the question of "breach of duty" (of a defendant's due care) as a matter of law, "rather than allowing a jury to resolve it as an issue of fact." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 470 (2d Cir. 1995). And eminent thinkers, from future Supreme Court justices to future presidents, have argued that judges, not juries, should decide if "due care" has been shown. *See, e.g.*, *Lorenzo v. Wirth*, 49 N.E. 1010, 1011 (Mass. 1898) (opinion of Holmes, J.); Richard M. Nixon, *Changing Rules of Liability in Automobile Accident Litigation*, 3 Law & Contemp. Probs. 476, 477 (1936). But the verdict of history, rightly or wrongly, has come out differently, and the "so-called Holmes view—that standards of conduct ought increasingly to be fixed by the court for the sake of certainty—has been largely rejected." Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts* § 15.3, at 358-59 n.16 (2d ed. 1986) (internal quotation omitted); *see also Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 8(b) (2010) ("When, in light of all the facts relating to the actor's conduct, reasonable minds can differ as to whether the conduct lacks reasonable care, it is the function of the jury to make that determination.").

With this added requirement in slip-and-fall cases, New York, as much as any state, overwhelmingly treats the question of whether a particular defendant showed sufficient care as a question for the jury — that is, a question not suited for summary judgment. *See Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 388 (1980) (noting negligence is an issue "particularly appropriate to leave . . . to the jury" because of the "idiosyncratic nature of most tort cases" and because "reasonableness" is generally appropriate for jury resolution); *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520 n.8 (1980) ("What safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury."); *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 268 (2d Cir. 1999) (collecting New York cases and stating that the "courts of New York" have repeatedly endorsed the notion that "judges should be very wary of taking the issue of liability away from juries, even in situations where the relevant dangers might seem obvious, and especially when the cases in question turn on particularized facts").

Against this background, we cannot say that a New York court would find, as a matter of law, that the commissary showed Borley due care. As outlined, the central issue here is whether Borley has established a triable issue of

fact as to whether the commissary had sufficient notice (constructive or actual) of the hazard posed by the existence of an open emergency door that had an ankle-high metal bar in front of it. If she has, then the district court should have let Borley's negligence claim reach a jury.

Under New York law, "[c]onstructive notice [of a property hazard] may be demonstrated by evidence of a recurring dangerous condition in the area of the accident that was routinely left unaddressed by the defendant." *Mullin v. 100 Church LLC*, 784 N.Y.S.2d 545, 546 (1st Dep't 2004). Such is the case here.

As noted, the commissary manager testified that the emergency doors came open roughly once a day. She further stated that these doors could come open even from casual impacts, as from a customer's shopping cart. And the commissary saw at least some problem in this state of affairs, as evidenced by its employees' efforts to close the doors each time they were opened and by its employees' policy of not themselves opening these doors.

To be sure, there was some evidence that the commissary engaged in occasional spot-checks to see if the emergency doors were closed, and that commissary employees would reclose these doors if they noticed that the doors had come open. And this, the government argues, shows the metal bar could not

have been a "recurring dangerous condition" that had been "routinely *left unaddressed*." *Id.* (emphasis added). We cannot say, however, that as a matter of New York law, the commissary's efforts, such as they were, represented a "rational means of dealing with the problem," such that the hazard posed by the emergency doors and metal bar could be considered sufficiently "addressed." *Cf. Harrison v. New York City Transit Auth.*, 941 N.Y.S.2d 622, 624 (1st Dep't 2012). Indeed, on the facts of this case, the defendant, notwithstanding its spot-check policy, may still be charged with constructive notice of the hazard created by the metal bar because, as the record shows, it lacked any meaningful procedure that would have reliably and promptly notified employees of an open emergency door, and because the metal bar served no clear purpose and could have been removed altogether.

Nor, contrary to defendant's assertion, was Borley's evidence on this point mere "speculation" or a "general awareness" of danger. *Cf. Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 838 (1986) (explaining that a "general awareness that litter or some other dangerous condition may be present" is insufficient to establish constructive notice of a hazard). Indeed, the evidence

showed that the commissary's manager specifically knew that these doors came open daily.

When confronted with comparable facts, New York courts have readily found evidence of constructive or actual landowner notice sufficient to permit slip-and-fall cases to go to trial. In *Garcia v. U-Haul Co.*, 755 N.Y.S.2d 900 (2d Dep't 2003), for example, summary judgment was denied where a plaintiff tripped over a beam on the floor, in view of an employee's testimony that "he had observed beams on the floor 'once in a while,'" and that he "saw beams on the ground or broken off about once or twice a month." *Id.* at 900. Likewise, in *Camizzi v. Tops, Inc.*, 664 N.Y.S.2d 964 (4th Dep't 1997), evidence that a grocery store's floor mat had "a three-inch-high buckle," and that the "store manager was aware that the mat buckled each day" was sufficient to affirm a jury's negligence verdict against that store. *Id.* at 964. Accordingly, we are confident that, after reviewing the facts of Borley's case, a New York court would deny summary judgment.

The defendant does point to several slip-and-fall cases applying New York law to grant summary judgment in favor of a defendant. *See, e.g., Feis v. United States*, 484 F. App'x 625, 628 (2d Cir. 2012) (defendant granted summary

judgment where plaintiff slipped on wet floor); *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 320, 323-24 (E.D.N.Y. 2014) (same; slipped on lid from a food container); *Hammond-Warner v. United States*, 797 F. Supp. 207, 209, 212 (E.D.N.Y. 1992) (same; slipped on "tan-colored slushy liquid"). But as even these cursory descriptions reveal, the cases that the government relies on center on a particular fact pattern: slippery surfaces, that is, floors made dangerous by "wear, wetness[,] litter" or comparable substances. *Gordon*, 67 N.Y.2d at 838; *see also Walsh*, 904 N.Y.S.2d at 124 (collecting "long line of authority dealing with slip-and-fall injuries caused by slippery floors"). In such cases, New York courts have hesitated to find constructive notice. But New York courts have not applied a similar analysis in cases where there were outright obstructions or tangible furnishings protruding from the ground. Accordingly, in the instant case, we are confident New York's courts would find sufficient constructive notice. *See, e.g.*, *Garcia*, 755 N.Y.S.2d at 900 (summary judgment denied in trip over protruding beam); *see also Harrison*, 941 N.Y.S.2d at 624 (granting defendant summary judgment for plaintiff's slip on paper litter while distinguishing cases where "the identical defect existed for a long period of time or recurred because of a failure to remedy a longstanding . . . *physical* defect" (emphasis added)).

Whatever the policy reasons underlying New York's slippery-surface analysis, the applicable standards for establishing constructive notice were not satisfied in those cases cited by the government, but are in the case before us.

Defendant might, however, be taken to be arguing that summary judgment was appropriate in the instant case because, as a matter of law, neither the door nor the low metal bar was "inherently dangerous," and hence even with notice, the defendant was not liable. But this argument is available only in cases where a danger or potentially dangerous condition is, as a matter of law, "open and obvious." *Nezami v. Price Costco Inc.*, 783 N.Y.S.2d 200, 201 (App. Term 2004) (summary judgment only permissible where condition complained of "was *both* open and obvious *and*, as a matter of law, not inherently dangerous" (emphases added)). Moreover, the "question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion." *Westbrook v. WR Activities-Cabrera Mkts.*, 773 N.Y.S.2d 38, 41 (1st Dep't 2004). The factual record in this case — including the low height of the metal bar and its placement in a spot where customers might plausibly be distracted (as happened here) — does not come close to "compelling" such a finding. *See Mullen v. Helen*

*Keller Servs. for the Blind*, 23 N.Y.S.3d 350, 352 (2d Dep't 2016) ("A condition that is ordinarily apparent to a person making reasonable use of his or her senses may be rendered a trap for the unwary where the condition is obscured or the plaintiff is distracted[.]" (internal quotation omitted)); *Patterson v. Troyer Potato Prods., Inc.*, 709 N.Y.S.2d 731, 732 (4th Dep't 2000) (tripping hazard of shelf located "near-floor level" found not to have been "open and obvious" as matter of law).

But even apart from the lack of openness and obviousness as a matter of law, the question of whether the emergency doors and the metal bar were "inherently dangerous" itself presents a triable issue of fact. Inherent danger is a highly fact-specific question, and hence usually one for the jury. *See Trincere v. County of Suffolk*, 90 N.Y.2d 976, 977 (1997) ("[W]hether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury[.]" (internal citation and quotation omitted)). Given the type of hazard involved here, an ankle-high metal bar surrounded by hard surfaces, we are confident that New York courts would follow the usual course in this instance. *See, e.g.*, *Wiedenbeck v. Lawrence*, 96 N.Y.S.3d 781, 782 (4th Dep't 2019)

(summary judgment denied because material issue of fact remained on whether "ridged metal threshold strip attached to the step in the entryway of defendants' commercial building" was inherently dangerous tripping hazard); *Johnson-Glover v. Fu Jun Hao Inc.*, 28 N.Y.S.3d 304, 305 (1st Dep't 2016) (same, metal stand protruding into store aisle); *Beplat v. City of New York*, 668 N.Y.S.2d 382, 383 (1st Dep't 1998) (same, two-inch valve protrusion above sidewalk).

In saying all this, we do not mean to suggest that a hazard's openness or obviousness are legally irrelevant. But where a plaintiff claims that a landowner breached its overall duty to keep customers safe, such "openness and obviousness," without more, go at most to comparative negligence. *See Baran v. Port Auth. of N.Y. & N.J.*, 148 N.Y.S.3d 685, 686 (2d Dep't 2021); *Holly v. 7-Eleven, Inc.*, 834 N.Y.S.2d 870, 870 (2d Dep't 2007). Indeed, "[e]ven if a hazard qualifies as 'open and obvious' as a matter of law," such a finding "merely eliminates the property owner's *duty to warn* of the hazard, but does not eliminate the *broader duty to maintain the premises in a reasonably safe condition*." *Aberger v. Camp*

*Loyaltown, Inc.*, 142 N.Y.S.3d 528, 532 (1st Dep't 2021) (internal citation omitted, emphases added).[3]

As a final observation, we note that both the defendant and the district court lean largely on federal court opinions reading New York tort law, and somewhat less on New York state tort cases. We do not believe today's conclusion breaks from any of these earlier federal decisions. But to the extent that there is any perceived tension, we offer the respectful reminder that in this context, as in others where we are charged with "state law adjudication," our "ultimate source" must be the "law as established by the constitution, statutes, or authoritative court decisions of the state" — and not federal courts' guesses as to what that law might be. *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006) (internal quotation omitted).

---

[3] Of course, unlike these cases, which apply New York procedural law, this case is governed by federal procedural rules, which assign to Borley the burden of presenting sufficient evidence to rebut the government's showing that it is entitled to judgment as a matter of law. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017). We find, however, that with respect to the issue of inherent dangerousness, Borley's evidence of the metal bar's location and dimensions readily meet this burden.

**CONCLUSION**

The district court's grant of summary judgment is VACATED, and this case

is REMANDED for further proceedings consistent with this opinion.