## No. 1252.

### James A. Reynolds et al. vs. The Texas and Pacific Railway Company.

Railway carriers are bound to furnish safe modes of passage between their depots and their trains, and at stations where trains pass at night they are bound to furnish proper and sufficient lights to make the way reasonably safe.

For injuries resulting from non-performance of these duties they are responsible.

When the negligence of the carrier is established, and is of a character greatly to multiply the chances of the accident which happened, and naturally leading to its occurrence, and when the evidence tends to connect the accident with the negligence, the mere possibility that the accident might have happened even without the negligence will relieve. Courts, in such matters, consider the natural and ordinary connection of events, and will not indulge in fanciful suppositions.

A PPEAL from the Thirteenth District Court, Parish of St. Landry. *Hudspeth*, J.

*Lewis & Bro.* and *W. S. Frazee* for Plaintiffs and Appellees:

It is the duty of railway companies to keep in a safe condition their premises, depots and approaches from thence to their passenger cars. Pierce on Railways, pp. 275-6.

The law implies in the contract of carrying passengers by railroad companies that they shall provide safe and convenient egress and regress from the lines of their road. Digress of American Law Register, p. 786, No. 4.

It is the duty of such companies to keep their depot, platforms and approaches from their passenger trains lighted up at night. Wharton on Negligence, pp. 654 and 652; 34 A. p. 777.

It is gross negligence in a railway company to suffer its passengers to grope their way in the dark from its depot to its passenger train over a crooked and unsafe passageway.

Our courts have authority to award exemplary damages against railway companies for gross negligence resulting in wounding and maiming a passenger, especially where such negligence is attributable directly to the company. 10 A. p. 34; same vol. p. 88.

The husband, for an injury inflicted on his wife, can sue for loss of her services to himself and his minor children, as well as the damages inflicted upon her. 10 A. p. 33.

*Moseley & Foster* for Defendant and Appellant :

A plaintiff in a case of damages *ex delicto* must make his case certain; a probable case will not satisfy the exigency of the law. 16 A. 121; 15 A. 105; 16 A. 151; 21 A. 185.

The negligence must be affirmatively proven. 15 A. 115; 27 A. 229; 11 A. 292; 23 A. 726; 18 L. 340; 35 A. 695 and 498; Wharton on Negligence, § 360, 871-2 and 899; Pierce on Railroads, 423; Thompson on Negligence, vol. 1, p. 512, § 15.

A plaintiff cannot recover for an injury which was purely accidental, and not shown to have been caused by any fault on the part of another.

A plaintiff who has contributed to an injury cannot recover, even if he succeeds in proving fault on the part of another. The rule of law in Louisiana is that where both are at fault neither can recover. 30 A. 15; 31 A. 490; 32 A. 615; 33 A. 154; 5 Otto 697; 18 L. 339; 3 A. 48 and 441; 6 A. 496; 11 A. 292; 23 A. 462; 23 A. 53; 36 A. 751; 28 A. 320; 9 A. 441.

Field on Damages, § 126 to 131, inclusive.

One must protect himself when he can. 23 A. 264; 30 A. 15.

No recovery can be had by one who knew of the alleged cause of the injury, and who could have avoided it and did not do so. 34 A. 180; 33 A. 155; 5 Otto 441; 6 McLean 242; 34 A. 1086.

Positive testimony must prevail over negative testimony. 33 A, 800; 26 A. —; 2 A. 1008; 37 A., case of Benjamin S Storey vs. Hope Insurance Co. (unreported).

No one should be allowed to increase by his own misconduct the amount of damages resulting from an injury for which he seeks to hold another responsible. 35 A. 1132; Sedgwick 170.

- There can be no recovery where there is an intervening cause, and where the imputed negligence was not the immediate and proximate cause. Field on Damages, secs. 9, 10, 11, 45 to 53 inclusive, and appendix, p. 705; American and English Railway Cases, vol. 10, pp. 740 and 752; 33 A. 641; American Law Register, vol. 33, No. 9, p. 604; 2 A. 144; 34 A. 180.

If there is a reasonable doubt as to the cause of an injury, the benefit of the doubt will be given to the defendant, if his trade is a lawful one. Wood's Law of Nuisances, sec. 472, 35 A. 648.

*Keunard, Howe & Prentiss* on same side:

1. Plaintiff, in a case of damages *ex delicto*, must make his case certain; a probable case will not satisfy the exigency of the law. 16 An. 121; 15 An. 105; 35 An. 498 and 694.

2. The burden of proof is on the plaintiff to show the defendant company's negligence whenever its liability for an injury depends on its negligence, and the negligence must be affirmatively proven. Thompson on Negligence, vol. 1, p. 512, sec. 15; Pierce on Railroads, p. 423; Wharton on Negligence, secs. 860, 871-2, 899; Fleytas vs. Pontchartrain Railroad, 18 L. 340; Klein vs. Railroad Company, 23 An. 726; Perkins & Billiu vs. Morgan, 27 Ann. 229; Knight vs, Opelousas Railway Case, 15 Ann. 115; Hill vs. Opelousas, 11 Ann. 292; 35 Ann. 694; 36 Ann. 244.

3. Proof that the injury was sustained is not *prima facie* evidence of negligence, and does not establish a charge of negligence against the person causing the injury. See Sherman on Negligence, sec. 5; Hammock vs. White, 11 C. B. N, S. 588.

4. The negligence complained of must have been the *immediate* cause of the injury sustained by plaintiff.

5. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances, or doing what such person under the existing circumstances would not have done. 95 U, S. Reports, p. 441, R. R. Co. vs. Jones.

6. The degree of care which the law expects, and the omission of which is negligence, is that degree which men of ordinary prudence would exercise in a given situation.

7. When circumstances point just as much to negligence on the part of one of the parties as to its absence, or points in neither direction, a recovery cannot be had. See 31 Ann, 490 3 Ann. 48, 441.

8. Plaintiff cannot recover for an injury resulting from the negligence of the defendant if, notwithstanding such negligence, he might have avoided the injury by the exercise of care and prudence on his part, or if his own want of such care and prudence, or that of the party injured, contributed to the injury. Am. Law Register, vol. 5, No. 5, p. 397; Redfield on Railways, p. 337.

9. There is abundant proof in the record that plaintiff was guilty of the grossest negligence.

10. An intervening agency of sufficient force and power of itself to have caused the injury, and occurring between the first cause and the result, is considered in law as the proximate cause of the injury, while the first cause is the remote; and plaintiff cannot recover when he declares on the first as the proximate cause, and it is shown not to be. See 7 Wallace 52; American Law Register, vol. 23, p. 604.

12. When two witnesses, unimpeached, contradict each other, the presumption is in favor of the one who swears affirmatively. H. D. p. 557 (d), 1] No. 12; 2 Ann. 1008 (bottom of page); 23 Ann. 800; Pierce on Railroads, 292 (bottom of page and note).

11. The *allegata* must correspond to the *probata*, and when witnesses contradict each other as to when, where and how the accident occurred, their testimony is to be taken with some allowances, and such inconsistencies affect their credibility.

13. The positive and affirmative testimony of one witness having no interest in a suit, supported by corroborating testimony and circumstances, is entitled to more weight and consideration than that of several who contradict each other on a material fact which they are introduced to prove.

14. Exemplary damages are only allowed when malice, fraud and grossest negligence are patent and proven. Sedgwick on Damages.

---

The opinion of the Court was delivered by

FENNER, J. The plaintiff and his wife claim damages of the defendant company for injuries suffered by the wife and caused by the alleged negligence of the company.

Mr. Reynolds, with his wife, sister-in-law, three small children and two colored attendants, had purchased tickets as passengers on the defendant road, and were at the depot at Morrogh Station for the purpose of boarding the east-bound train, which was due at that station at about midnight, but, being behind time, did not reach there till about two o'clock in the morning.

Between the depot and the regular track on which the passenger train arrived there was a switch-track, which, on the night in question, was occupied by a freight train, and, by uncoupling the latter, a passage way was opened to the passenger cars.

The mode of getting from the depot to the cars was as follows: passengers went down a stairway of several steps, which ran parallel to the track and led to a lower platform; on reaching which they turned squarely to the right and passed between the uncoupled cars to the train. These steps were unprotected by railing, and on the left of them there was a ditch. The platform at the bottom extended five feet towards the front, and beyond it there was a slope running to the bot-

tom of a ditch. If, in descending, the passenger went too far to the left, he tumbled into a ditch; if he did not turn promptly to the right on reaching the bottom and went too far forward, he fell down the slope in front; and if he stumbled in going down the stairs his impetus was likely to carry him over the narrow platform in front and down the slope beyond.

It is obvious that, while such a passage might fulfill all customary and reasonable requirements of safety in the daytime, or when well lighted, yet at night, and when not sufficiently lighted up, it undoubtedly exposed passengers unfamiliar with it to danger of fall and injury. Although both the east and west-bound trains customarily stopped at this station in the night-time, no stationary lights were provided for the depot platform or the steps. There was no moon on this night. The lights of the engine and passenger coaches were intercepted by the intervening freight cars, except such as might have passed through the opening above referred to, which we are satisfied was of no value. The lights in the rooms of the station could have shed no light on the bottom of the steps. There is much conflict of testimony touching the presence and position of a conductor and brakeman with lanterns, which we need not discuss. After an attentive study of the evidence, we clearly concur in the conclusion of the district judge that there was no sufficient light; that its absence rendered this passage from the depot to the train insecure, and constituted negligence in the company and a failure to perform its duty of providing safe modes of ingress and egress between its depots and its trains. We are impressed by the judicious comments of the judge on the conflicts in the evidence, viz : "There are here, as there will always be, contradictions and discrepancies amongst witnesses in all such cases, so long as stationary lights are not provided, and so long as this mode of providing lights for passengers boarding or leaving the cars is adhered to. What is sufficient for purposes of ingress and egress from cars, until stationary fixed lights are provided, will ever be a matter dependent on the discretion of conductors, brakemen and other employees, liable to be varied by every change made in these employees. * * * Even granting there were lanterns or lamps held by employees, a change of position of a few feet, even a step or two, would suffice to leave positions in darkness one minute which were in light the next, and *vice versa*."

The train was behind time. Several witnesses testify that passengers were warned to "hurry up." Mrs. Reynolds, a corpulent woman, weighing two hundred and fifty pounds, emerging from the bright

light of the sitting-room, which naturally exaggerated the outside darkness, and hastening down these unlighted steps, made a misstep in some way and was precipitated beyond the narrow platform in front and down the slope beyond, incurring the serious injuries complained of.

Upon what grounds do the company claim exemption from liability?

1st. It denies the fact of negligence on its part, and contends that the way was safe and the lights sufficient.

We have already disposed of this contention, and have found that the light was insufficient and that this rendered the way insecure. The duty of railway carriers to provide safe modes of egress and ingress to and from their cars, and to provide sufficient lights at their stations where passengers take or leave their trains at night, is well established by authority, and has been recently expounded and enforced by ourselves. Peniston vs. R. R. Co., 34 Ann. 777; Turner vs. R. R. Co., 37 Ann.; Lehman vs. R. R. Co., 37 Ann.; Wharton on Negligence, § 654, 652 and authorities there cited.

2nd. It contends that, even conceding the negligence of the company in the above respect, it does not follow that the accident to plaintiff was necessarily caused thereby, but that she might well have made the misstep and fallen even had it been broad daylight. We concede that this is possible, and recognize the distinction between *post hoc* and *propter hoc*. But where the negligence of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury. Courts, in such matters, consider the natural and ordinary course of events, and do not indulge in fanciful suppositions. The whole tendency of the evidence connects the accident with the negligence.

3rd. It is claimed that there was contributory negligence on the part of the husband in leaving his wife to grope her way unattended by himself. The evidence satisfies us that Reynolds' absence was due to another fault of defendant's station agent in requiring him to assist in putting his own baggage on the cars, because some of the employees, whose duty it was, were absent. But aside from this, his wife, though a corpulent, was not an infirm woman, and was fully capable of taking care of herself. We have considered the case in all its bearings, and find no reason to doubt the correctness of the district judge's conclusion holding defendant liable.

As to the *quantum* of damages, the injury consisted in a dislocation of the ankle and a fracture of the leg below the knee. There resulted no loss of the limb. The evidence shows that, notwithstanding the accident, she went on the cars and continued without interruption her long railroad journey to Florida, without availing herself of medical attention, and that, even after arrival there, she received but trifling medical aid. These facts impressed the district judge as they do ourselves. No doubt she suffered greatly, and perhaps she has not yet fully recovered; but how much her suffering and the effects of her injury may have been increased and prolonged by this unusually imprudent conduct it is impossible to say.

The judge allowed her two thousand dollars as damages, and we will not disturb his finding.

Sundry bills of exception were reserved to rulings of the judge on reception or rejection of the evidence. We have considered them all, and find no merit in any of them.

Judgment affirmed.