**IN THE**

# United States Court of Appeals

## For the Second Circuit

_____

AUGUST TERM, 2022

ARGUED: JANUARY 12, 2023
DECIDED: APRIL 6, 2023

No. 21-2653

UNION MUTUAL FIRE INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

ACE CARIBBEAN MARKET, NEERA RAMDIN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Eastern District of New York.
1:18-cv-01570 – Komitee, *District Judge.*

_____

Before: CALABRESI, CHIN, and BIANCO, *Circuit Judges.*

_____

Plaintiff-appellant Union Mutual Fire Insurance Company ("Union Mutual") appeals from a judgment of the United States District Court for the

Eastern District of New York (Komitee, *J.*). This insurance subrogation suit arose from a fire which started at 110-14 Liberty Avenue in Queens, New York, and which damaged the neighboring buildings insured by Union Mutual. On appeal, Union Mutual argues that sufficient circumstantial evidence shows that the negligence of defendants-appellees Ace Caribbean Market and Neera Ramdin, proprietor and owner of 110-14 Liberty Avenue, respectively, caused the fire. We disagree. We therefore AFFIRM the district court's grant of summary judgment for the defendants.

---

ERIC T. BORON, Hurwitz & Fine, P.C., Buffalo, NY (Agnieszka Wilewicz, Hurwitz & Fine, P.C., Buffalo, NY, *on the brief*), *for Plaintiff-Appellant Union Mutual Fire Insurance Company*.

DENNIS M. ROTHMAN, Lester Schwab Katz & Dwyer, LLP, New York, NY, *for Defendants-Appellees Ace Caribbean Market, Neera Ramdin*.

---

CALABRESI, *Circuit Judge*:

Plaintiff-appellant Union Mutual Fire Insurance Company ("Union Mutual") appeals from a judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*). On March 4, 2017, a fire started at 110-14 Liberty Avenue in Queens, New York, spreading to and damaging four neighboring buildings insured by Union Mutual. After an investigation, the fire

marshals concluded, but could not determine with certainty, that the fire originated in the extension cords used by Ace Caribbean Market. Union Mutual paid proceeds to the damaged neighboring buildings, and subrogated into their owners' tort claims. Union Mutual then sued Ace Caribbean Market and Neera Ramdin (collectively, "defendants"), alleging that their negligent use of the extension cords caused the fire. The district court granted summary judgment for the defendants.

This case requires us to determine whether in an insurance subrogation case, evidence that a fire may have originated in the extension cords is sufficient to show that (a) the owners and proprietors were negligent in their use of the extension cords and (b) if they were negligent, that negligence was the cause of the fire. We hold that such evidence is not sufficient. We therefore affirm the district court's grant of summary judgment for the defendants.

**BACKGROUND**

The facts, viewed in the light most favorable to Union Mutual as the nonmoving party in the district court, are as follows. Located on the first floor of 110-14 Liberty Avenue, Ace Caribbean Market used four refrigerators and freezers to display vegetables and beverages. The refrigerators and freezers could not be

plugged directly into electric outlets, because there were none on the floor of the store. Instead, the store used power strips and surge protectors to power its appliances.[1]

On March 4, 2017, a fire started in Ace Caribbean Market at around 10:52 PM. No one was inside of the store at the time. The fire destroyed or damaged four buildings around Ace Caribbean Market insured by Union Mutual. Union Mutual paid around $1.5 million in insurance proceeds for physical loss, loss of business income, and removal of debris resulting from the fire damage of the four buildings, and subrogated into their owners' tort claims.

Supervised by James Kelly, fire marshal Matthew Lewis of the New York Fire Department ("FDNY") led the fire investigation. Lewis found a V-shaped burn pattern, as well as heavily damaged power strips and extension cords, in the rear of Ace Caribbean Market. On the Fire Incident Report, Lewis input the numerical code for "Extension Cord" as the cause of the fire. A 85. But Lewis

---

[1] Two employees and the owner of Ace Caribbean Market stated that no extension cords were used in the store. But viewing the evidence in the light most favorable to Union Mutual as the nonmoving party in the district court, we assume that Ace Caribbean Market did use extension cords to power some of its appliances. There was no electric outlet into which the refrigerators could directly be plugged, and fire marshal Lewis recovered damaged extension cords in the store after the fire.

explained that the cause was "not fully ascertained due to structural collapse," as the collapsed roof and the second floor of the building damaged the area of the fire's origin. *Id.* (capitalization omitted). While extension cords that are plugged into each other could overheat and start a fire, neither Lewis nor Kelly found any evidence of misuse or overload. FDNY did not send any of the damaged electrical components for testing, and Lewis acknowledged that the extension cords and the power strip could have had manufacturing defects. Kelly confirmed Lewis's findings, testifying that while he believed that the extension cords were the probable cause of the fire, he could not make the determination with certainty. Kelly was confident that the fire *originated* in the rear of Ace Caribbean Market where the extension cords were found, but was not sure as to its cause.

On March 14, 2018, Union Mutual sued Ace Caribbean Market and Ramdin in the United States District Court for the Eastern District of New York. Union Mutual alleged *inter alia* that defendants' misuse of the extension cords caused the fire. In the district court, defendants called two expert witnesses. The first, a former FDNY fire marshal, found no evidence that defendants' actions contributed to the cause of the fire, and noted that due to the extensive damage caused by the fire, the origin of the fire within Ace Caribbean Market could not be determined

5

to the exclusion of other fire-origin hypotheses. The second defense expert, an electrical engineer, found no evidence that the extension cords caused the fire, or that the defendants misused or overloaded them. Union Mutual had engaged an expert of its own, but did not identify him as a witness or produce any report from him in the district court.

On September 10, 2020, defendants moved for summary judgment. Defendants argued that Union Mutual produced no evidence showing that their negligence caused the fire. Union Mutual opposed summary judgment, contending *inter alia* that the parties had genuine disputes of material fact over whether Ace Caribbean Market's use and overload of the extension cords caused the fire.

On September 30, 2021, the district court granted defendants' motion for summary judgment. The district court noted that to succeed on a negligence claim, plaintiffs must show duty, breach, causation, and damages. With respect to breach, the district court noted Union Mutual's argument that defendants breached the applicable standard of care by plugging the refrigerators into light-gauge extension cords, which can overheat if overloaded. The district court found

no record evidence about the actual amount of electricity used by the refrigerators, and did not focus further on issues of breach.

The district court held that Union Mutual failed to produce sufficient evidence to establish causation. The district court concluded that Lewis's report and testimony did not establish a reasonable probability that defendants' negligence caused the fire, because Lewis could not determine the cause of the fire with certainty. Because Union Mutual produced no other evidence of causation, the district court granted summary judgment for defendants.

Union Mutual timely appealed.

## DISCUSSION

On appeal, Union Mutual argues that the district court erred in granting summary judgment for defendants, because it produced sufficient evidence that defendants' negligence, in particular their use of the extension cords, caused the fire. We review *de novo* a district court's grant of summary judgment. *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016). "Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.

R. Civ. P. 56(a)). "In determining whether there are genuine disputes of material fact, we are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Id.* (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). "We will affirm summary judgment '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (quoting *Akins v. Glens Falls City Sch. Dist.*, 424 N.E.2d 531, 535 (N.Y. 1981)). In the absence of "direct" evidence of causation, New York courts consider three factors in deciding whether a factfinder can conclude that a defendant's negligence caused the accident. *Reginella*, 819 F.3d at 675; *accord Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 121 (2d Cir. 2006); *cf. Williams v. KFC Nat'l Mgmt. Co.*, 391 F.3d 411, 424–25 (2d Cir. 2004) (Calabresi, J., concurring). "First, was there evidence of negligence or a defect on defendant's part, and, if there was, did that negligence or defect increase

the chances of plaintiff's injury occurring, and by how much? That is, how strong was the circumstantial evidence of causation?" *Reginella*, 819 F.3d at 675. "Second, which party is better placed to tell us whether the negligence or defect was in fact likely to be a cause of the injury or whether the injury would have happened regardless of the negligence or defect?" *Id.* at 676. "And third, has the relevant jurisdiction . . . indicated a preference in favor of or against liability in the given context?" *Id.*

The second and the third factors are not significant in the case before us. Defendants may have misrepresented their use of extension cords in the building. But no one was in Ace Caribbean Market when the fire started, and defendants are not better positioned to explain the cause of the fire. Further, New York has not indicated a preference in favor of or against liability in this context. New York courts have upheld insurers' equitable subrogation claims against third-party tortfeasors, but have also articulated anti-subrogation rules to spread costs through insurance companies rather than concentrate them. *Compare, e.g., Fed. Ins. Co. v. Arthur Andersen & Co.*, 552 N.E.2d 870, 875–76 (N.Y. 1990) ("While arguably a compensated insurer or surety should in fairness bear the loss where the third party's liability is solely contractual and not based on fault, such a result seems

neither fair nor judicious when the loss has been caused by the third party's tortious conduct." (citations omitted)), *with Pa. Gen. Ins. Co. v. Austin Powder Co.*, 502 N.E.2d 982, 985 (N.Y. 1986) (prohibiting an insurer's subrogation claims against its insured, in part because subrogation would permit the insurer to "pass the incidence of the loss . . . from itself to its own insured" (alteration in original) (internal quotation marks omitted)). *See generally* Guido Calabresi, The Cost of Accidents 39–67 (1970).

We therefore turn to the first factor, the strength of the circumstantial evidence. *Reginella*, 819 F.3d at 675. Broadly speaking, proof of cause-in-fact is almost always circumstantial. *See* Kenneth S. Abraham, *Self-Proving Causation*, 99 Va. L. Rev. 1811, 1812 (2013) ("All evidence of causation ultimately is circumstantial evidence."). The question is how dangerous or risky an activity is with respect to causing a particular kind of harm. At one time, wary of the *post hoc ergo propter hoc* fallacy, courts demanded "direct" evidence of causation, and were reluctant to find, as sufficient evidence of causation, an activity's strong propensity to cause the kind of harm which ensued. *See, e.g.*, *Wolf v. Kaufmann*, 237 N.Y.S. 550, 551 (App. Div. 1929) (dismissing a negligence suit where the deceased victim was found unconscious at the bottom of the stairs which were

unlighted in violation of housing regulations, because of "a total absence of proof of any causal connection between the accident and the absence of light").

That has changed after courts grasped the thrust of *Martin v. Herzog*, 126 N.E. 814 (N.Y. 1920). In that case, Judge Cardozo held that where a defendant's negligence increased the risk of an accident, more direct evidence is not required for a jury to find that it was the negligence that caused the harm. *Id.* at 816. Thus, where a buggy, traveling without lights in violation of a statute, collided with a car at nighttime, "a case, prima facie sufficient, of negligence contributing to the result" is established. *Id.; see also Clark v. Gibbons*, 426 P.2d 525, 542 (Cal. 1967) (Traynor, C.J., concurring in part and dissenting in part); *Reynolds v. Tex. & Pac. Ry. Co.*, 37 La. Ann. 694, 698 (1885) ("We . . . recognize the distinction between *post hoc* and *propter hoc*. But where the negligence of the defendant greatly multiplies the chances of accident to the plaintiff, and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect between the negligence and the injury.").

As New York's highest court said in *Schneider v. Kings Highway Hospital Center, Inc.*, 490 N.E.2d 1221 (N.Y. 1986), "[t]o establish a prima facie case of

negligence based wholly on circumstantial evidence, '[i]t is enough that [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.'" *Id.* at 1221 (quoting *Ingersoll v. Liberty Bank*, 14 N.E.2d 828, 830 (N.Y. 1938)); *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 271 (2d Cir. 1999) (concluding, under New York law: "When a defendant's negligent act is deemed wrongful precisely because it has a strong propensity to cause the type of injury that ensued, that very causal tendency is evidence enough to establish a *prima facie* case of cause-in-fact. The burden then shifts to the *defendant* to come forward with evidence that its negligence was *not* such a but-for cause."); *Zuchowicz v. United States*, 140 F.3d 381, 390–91 (2d Cir. 1998) (applying federal law).

Circumstantial evidence is therefore enough if there is a strong link between (1) an activity considered wrongful because it increases the risk that a particular type of harm would occur and (2) the occurrence of that exact type of harm. *See* Guido Calabresi, *Concerning Cause and the Law of Torts: An Essay for Harry Kalven, Jr.*, 43 U. Chi. L. Rev. 69, 71–72 (1975) (explaining the concept of "causal link"). For this causal link to be made out, however, there must be sufficient evidence of

negligence on the part of the defendant that increased the chances of the harm that occurred.[2]

To show such negligence, Union Mutual relies almost exclusively on the fire marshals' report and testimonies that the fire originated in the extension cords located in the rear of Ace Caribbean Market, and that overloaded extension cords can overheat and cause fires. But the fire marshals also stated that they could not fully ascertain the cause of the fire due to structural collapse and were more confident about the fire's origin than its exact cause. And defendants' experts both concluded that defendants' actions did not contribute to the fire.

At most, Union Mutual therefore produced weak circumstantial evidence that something wrong with the extension cords caused the fire. But, even assuming a reasonable jury could so conclude, Union Mutual showed no evidence of negligence whatsoever on defendants' part, and evidence of causation by itself is not evidence of negligence. *See Martin v. Herzog*, 126 N.E. at 816 ("We must be on our guard, however, against confusing the question of negligence with that of

---

[2] We speak of negligence, as that is the asserted basis of liability in the case before us. Where the basis of liability is other, e.g., strict products liability or extra-hazardous liability, that basis must be established by sufficient evidence.

the causal connection between the negligence and the injury."). The fire marshals' testimonies that the fire originated in the extension cords do not, on their own, show that the defendants were negligent in their use of the extension cords.

Still, though Union Mutual has not directly argued it, we must consider whether the situation before us is one in which the plaintiff can rely on the doctrine of *res ipsa loquitur* (a) to create a jury question as to the existence of defendant's negligence and (b) given such a possible finding of negligence, to create an inference of causation. *Cf. Morejon v. Rais Constr. Co.*, 851 N.E.2d 1143, 1144, 1149 (N.Y. 2006) (noting that *res ipsa loquitur* "is nothing more than a brand of circumstantial evidence" that "allows a jury to . . . infer that the defendant was negligent in some unspecified way").

Like causation, *res ipsa loquitur* involves three factors: (1) strength of the circumstantial evidence; (2) relative knowledge; and (3) preference in favor of or against liability. *See KFC Nat'l Mgmt. Co.*, 391 F.3d at 424–25 (Calabresi, J., concurring). And, as with causation, in the current case the second and the third factors are not significant, so we look to the strength of the circumstantial evidence, i.e., the likelihood that the accident would not have occurred without defendant's negligence.

Traditionally, to succeed on a *res ipsa loquitur* theory, New York courts have required three elements: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Morejon*, 851 N.E.2d at 1147 (quoting *Corcoran v. Banner Super Mkt., Inc.*, 227 N.E.2d 304, 305 (N.Y. 1967)). More recently, however, New York courts have in practice eliminated exclusive control as an absolute requirement, and permitted plaintiffs to show, sufficiently, that other possible controllers were not the negligent cause. *See Ebanks v. N.Y.C. Transit Auth.*, 512 N.E.2d 297, 298 (N.Y. 1987) (requiring plaintiffs who rely on the doctrine of *res ipsa loquitur* to "establish that the likelihood of [negligent causes not within the defendant's control] was so reduced 'that the greater probability lies'" in defendant's instrumentality (quoting *Dermatossian v. N.Y.C. Transit Auth.*, 492 N.E.2d 1200, 1205 (N.Y. 1986))).

Crucially, in the case before us, fire marshal Lewis expressly testified that the extension cords and the power strip "[v]ery well could have" had manufacturing defects in them. A 305. And Union Mutual failed to introduce any evidence that such possible manufacturing defects were not the negligent cause.

As a result, Union Mutual did not adduce evidence that the fire was caused by an instrumentality within the requisite control of the defendants, who are the owner and proprietor of the burned building rather than the manufacturer of the extension cords. The *res ipsa loquitur* argument therefore cannot be made here. There may have been negligence, and that negligence may have been the cause of the fire. But no inference that it was the defendants' negligence is permissible on the facts before us.

We therefore conclude that under New York law, in the insurance subrogation case before us, evidence that a fire may have originated in the extension cords used by defendants was not enough to show that (a) the defendants were negligent in their use of the extension cords or (b) their negligence caused the fire.

## CONCLUSION

We have considered Union Mutual's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.